**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREGORY SHEINDLIN,

              Plaintiff,

v.                                     **COMPLAINT**

JAMES BRADY,

              Defendant.

-------------------------------------------------------------x

## PRELIMINARY STATEMENT

Plaintiff recognizes the delicate balance between one person's right to freedom of speech and another's right to protect his good name. But here incontrovertible proof compels the conclusion that defendant James Brady ("Brady") committed and will continue to commit defamation *per se* with actual malice to harm the reputation of Plaintiff Gregory Sheindlin ("Sheindlin").

Underlying Brady's defamation are two New Yok State real estate-related litigations that did not end in Brady's favor. See *Brady v. Berman*, 18 cv 8459 (VEC) 2019 WL 4546535. In one of these cases, a unanimous petit jury found defendant Brady liable for money damages to IGS Realty Co, LP ("IGS"). See *IGS Realty Co, LP. v. James H. Brady*, Index No. 603561/2009 (Sup. Ct. N.Y. County) ("*IGS Realty I*"). Then, represented by Sheindlin, IGS entered judgment and commenced an enforcement proceeding. See *IGS v. Brady*, Index No. 159554/2017 ("*Enforcement*

*Proceeding*"). Pursuant to a court order (Goetz, J.), IGS collected $1,705,535.71 to satisfy the judgment. See *Enforcement Proceeding* (NYSCEF Doc. No. 64); and *IGS Realty I* (NYSCEF Doc. No. 345 [Satisfaction of Judgment]).

Thereafter, Brady embarked on an unlawful campaign in the state and federal courts to impugn the motivations and integrity of judicial officials, adversaries and their attorneys, including Sheindlin, who were involved with the adverse state-court decisions. See *Brady v. IGS*, 19 cv 10622 (PAE) 2020 WL 6049649 [citing *Brady v. Goldman*, No. 16 Civ. 2287 (GBD)(SN) 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3, 2017)]. It is for these reasons the mendacity of Brady's statements has already been adjudicated by numerous court decisions containing factual findings, repeated warnings, sanctions, and injunctions prohibiting Brady from commencing any more actions relating to his losses in the state-court adjudications. *Brady v. IGS*, *Id*.

Now, Brady has chosen a different strategy to attack his losses in state-court. He is engaging in a campaign of defamation to impugn the integrity and motivations of Gregory Sheindlin, the attorney who represented several of his adversaries in state-court proceedings. More specifically, on August 13, 2020, Brady committed *per se* defamation on the *YouTube* internet site by posting three videos with titles stating: "*Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018.*" See *Exh. 2 to Sheindlin Decl.* Brady's intent to harm Sheindlin's

personal and professional reputation was further evidenced by his follow-up postings on *YouTube* that included the following: "*Justice requires Gregory Sheindlin to serve a long prison sentence and lose his law license so he can never inflict fraud schemes again*." See *Exh. 2-6. to Sheindlin Decl.* To date, these videos have garnered over 13,000 views. See *Sheindlin Decl., ¶ 22.* On or about January 13, 2021, Brady committed *per se* defamation on the *Craigslist* internet site by posting an advertisement for an attorney to represent him that included a statement accusing Sheindlin of using false instruments in a fraud scheme to collect over 1.7 million dollars. See *Exh. 8 of Sheindlin Decl.* On January 28, 2021, Brady committed *per se* defamation when, in apparent response to Sheindlin's second demand for him to remove his defamatory statements from the internet, he authored an emailed correspondence to forty-four people who work in the news industry that accused Sheindlin of stealing his money, fraud and other unprofessional conduct during the state-court litigations. See *Exhs. 5 and 6 to Sheindlin Decl.*

The uncontroverted evidence proves that defendant Brady committed defamation *per se*. It also establishes Brady's actual malice, as a matter of law, in that he published his defamation despite his knowledge of numerous court decisions telling him that they were false. This case presents an extraordinary circumstance that not only warrants punitive damages against a vindictive, disgruntled, serial

litigant but requires an injunctive order directing Brady to remove the defamatory posts and prohibiting him from future publications of similar statements.

## I. PARTIES

1.  Sheindlin is an attorney admitted to, and in good standing before, the New York State and California bars. His law firm, Law Office of Gregory Sheindlin, P.L.L.C. (d/b/a Sheindlin Law Firm) is located at 200 Vesey Street, New York, New York 10281.  He resides in the City of New York, State of New York

2.  Brady is a person of legal age who resides in Wyckoff, New Jersey.

## II. JURISDICTION

3.  This Honorable Court has diversity jurisdiction to hear and decide this matter pursuant to *28 U.S.C. section 1332* as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a plaintiff and defendant who are citizens of different states.

## III. FACTUAL ALLEGATIONS

### *IGS Realty I*

4.  On June 26, 2015, after a trial presided over by State Supreme Court Justice Judge Barry Ostrager, a unanimous jury found defendant Brady in breach of three personal guarantees relating to his lease agreements with his commercial landlord, IGS, and said jury rejected all of Brady's defenses and counterclaims. See *Brady v. IGS,* 19 Civ. 10142 (09/08/2020 at p.3).

5.    Robert Fass, Esq. represented IGS during the trial in *IGS Realty I*. See *Sheindlin Decl.,* ¶¶ *5, 6*.

6.    On July 29, 2016, approximately one year later, IGS retained Sheindlin to represent it at a hearing to determine attorneys' fees and settle the judgment. See *Sheindlin Decl.,* ¶ *7*.

7.    On May 31, 2017, on behalf of IGS, Sheindlin filed judgment in the amount of $1,458,002.33 ("Judgment"). See *IGS Realty I* (NYSCEF Doc. 331); *Sheindlin Decl,* ¶ *8*.

8.    On April 13, 2017, the Appellate Division, First Department unanimously affirmed Supreme Court's denial of Brady's motion to set aside the jury verdict. See *IGS Realty I*, 149 A.D.3d 523 (1st Dept. 2017); and 32 N.Y.3d 927 (Aug. 30, 2018) [motion for re-argument and leave to appeal denied].

9.    On June 7, 2018, the Appellate Division, First Department denied Brady's motion that attacked the verdict, holding his arguments were previously raised and rejected by it and thus barred by the law of the case. See *IGS Realty I*, 162 A.D.3d 444 (1st Dept. 2018).

10.   On October 23, 2018, the New York State Court of Appeals rejected Brady's motion for re-argument and denied his application for leave to appeal. See *IGS Realty I*, 32 N.Y.3d 1053.

### *IGS Enforcement Proceeding*

11. On October 27, 2017, IGS, represented by Sheindlin in the *Enforcement Proceeding*, filed a Petition against defendant Brady, a Respondent-Debtor, and it named over twenty respondents-creditors (*Id., ECF 1*) – each of whom was a creditor resulting from sanctions imposed against Brady by New York courts. See *James Brady v. Jeffrey Katz et al.*, Index No. 654226/2013 (01/30/2015) (NYSCEF Doc. 296)[1] and *James Brady v. 450 West 31st Street Owners Corp et al.*, Index No. 157779/2013 (09/10/2015) (NYSCEF Doc. 227) [2].

12. On May 23, 2018, the court (Goetz, J.) issued an order directing Brady to turn over the shares and proprietary leases in his commercial cooperative units to the New York City Marshall's Office and ordered that Office to conduct a public auction and distribute the sale proceeds to pay any judgment debtor or lien holder. See *IGS Enforcement Proceeding (NYSCEF Doc. No. 64)*.

---

1. In *James Brady v. Jeffrey Katz et al.*, Index No. 654226/2013 (01/30/2015) (NYSCEF Doc. 296), the court ordered Brady to pay sanctions to two defendants in the respective amounts of $79,263.87 and $79,263.87.

2. In *James Brady v. 450 West 31st Street Owners Corp et al.*, Index No. 157779/2013 (09/10/2015) (NYSCEF Doc. 227), the court ordered Brady to pay sanctions to Defendants 450 West 31st Street Owners Corp. and its board members in the sum of $103,063.53, Defendants Owain Hughes Chodosh Realty Services Inc. and Jon Chodosh in the amount of $17,560.50 and Defendants Stanley Kaufman, Esq., Kaufman, Friedman et al., Vincent Hanley and Hanley & Goble in the amount of $53,844.10.

13.  On September 5, 2018, prior to the public auction, Brady sold his commercial cooperative apartment for approximately $9.5 million dollars. *Sheindlin Decl., ¶¶ 11-13.*

14.  Each of the above-described judgment debtors were paid from the process of this sale at the closing. See *Sheindlin Decl., ¶ 14.*

15.  On behalf of IGS, the New York City Marshall's Office collected $1,705,535.71 from the proceeds of the sale. See *Exh. 15 to Sheindlin Decl.*

16.  Ultimately, with respect to IGS' Judgment, the sale proceeds were distributed as follows: (i) $1,624,003.37 for IGS; and (ii) $81,532.34 retained by the New York City Marshall as his statutory and poundage fees. See *Sheindlin Decl., ¶ 16.*

17.  On September 19, 2018, a Satisfaction of Judgement was filed in *IGS Realty I.* See *Sheindlin Decl., ¶ 17*; and *IGS Realty I* (NYSCEF Doc. No. 345).

## Brady's Campaign to Impugn Motivations and Integrity of Anyone Involved with the Adverse State-Court Decisions

18.  As described in court decisions, despite Brady's full and fair opportunity to litigate his legal rights at every level of the New York State judicial system, he would commence a litany of vexatious and harassing legal actions where he impugned the motivations and integrity of anyone involved with the adverse state-court decisions. See *Brady v. Berman*, 18 cv 8459 (VEC) 2019 WL 4546535; and *Brady v. IGS*, 19 cv 10622 (PAE) 2020 WL 6049649 [citing *Brady*

*v. Goldman*, No. 16 Civ. 2287 (GBD)(SN) 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3, 2017)].

### ***Brady v. Berman* Action (S.D.N.Y., 2018)**

19.  On September 17, 2018, Brady commenced an action against Geoffrey Berman, United States Attorney for the Southern District of New York. See *Brady v. Geoffrey Berman et al.*, 18-cv-8459 (VEC) (*ECF 1*).

20.  In Brady's Complaint (*Id., ECF 1*), he made the following allegations: the first undisputed crime was committed by New York State Supreme Court Justice Shirley Kornreich where she admitted to committing a crime by removing and replacing words in a contract that was done to void the contract and, additionally, issuing $500,000 in sanctions against Brady to make him too weak to fight back against her unlawful actions (*id.*, ¶2); [*referencing IGS Realty I*] the second undisputed crime was committed by Supreme Court Justice Barry Ostrager, Appellate Division, First Department judges Peter Tom, Barbara Kapnick, Richard Andrias and Troy Webber, and the NYS Court of Appeals when they deliberately refused to apply the law to proven facts that would have voided Brady's personal guarantees in an effort to retaliate and punish Brady for his year-long effort to disclose their corrupt conduct (*Id.*, ¶3); and US Attorney Berman has participated in the crimes by refusing to investigate or acknowledge them (*Id.*, ¶5).

21. On August 2, 2019, this court granted defendant's motion to dismiss, noting, "Plaintiff James. H. Brady, a serial litigant . . . brings this action for injunctive relief . . . seeking "protection" from two "admitted crimes that took place under the color of law." Both "admitted crimes" consist of unfavorable judicial decisions issued by the New York State courts in a series of real estate-related litigations that did not end in Brady's favor." See Id., *2019 WL 4546535.*

22. With respect to *IGS Realty I*, the decision made the following findings:

> The "second undisputed crime," according to plaintiff, "was committed by Supreme Court Justice Barry Ostrager, Appellate Division, First Department judges Peter Tom, Barbara Kapnick, Richard Andrias, and Troy Webber, and the NYS Court of Appeals [when they] deliberately refused to apply the law to the admitted and proven facts" in *IGS Realty v. Brady*. Compl. ¶¶ 3, 37. As a result, plaintiff was required to "pay over $1.7 million dollars" to IGS Realty, which "destroyed [his] three meeting hall businesses because the Judges of the State of New York deliberately refused to address the merger clause of [his] three corporate leases, and have refused to apply the law that voids personal guarantees to the admitted facts as part of a retaliation scheme against [plaintiff]."

See *id.*

23. The legal basis for dismissing Brady's action was his lack of standing to sue and the filing injunction issued in *Brady v. Goldman*, 2017 WL 496083, at 2, which was viewed as extending to Brady's claims against *IGS Realty*. See *id.*

### *Brady v. Ostrager* Action (S.D.N.Y. 2019)

24. On July 30, 2019, Brady filed a Complaint against Hon. Barry R. Ostrager, J.S.C., collaterally attacking the jury verdict rendered in *IGS Realty I*. See *Brady v. Ostrager*, 19 CV 7122 (*ECF 2*).

25. In this Complaint, Brady alleged: (a) Justice Ostrager retaliated against Brady during the 2015 trial (*id.*, ¶11); (b) IGS and Justice Ostrager colluded to engage in improper conduct throughout the trial (*id.*, ¶¶67-89) and (c) the Appellate Division acted improperly by deliberately refusing to adjudicate the Personal Guarantee defense (*id.*, ¶¶35, 60-61).

26. Judge Schofield issued an order dismissing the action for two overlapping reasons: judicial immunity and the *Rooker-Feldman doctrine* [citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, (2005)]. See *Brady v. Ostrager,* 19-CV-7122 (LGS) (S.D.N.Y, Aug. 20, 2019); Aff'd, *Brady v. Ostrager*, (2d Cir., 11/02/20) 2020 WL 6387339.

### *Brady v. IGS* Action (S.D.N.Y. 2019)

27. On October 31, 2019, Brady filed a Complaint against IGS alleging civil rights violation which, in actuality, were another collateral attack on the jury verdict in *IGS Realty I*. See *Brady v. IGS*, 19 Civ 10142 (S.D.N.Y.) (PAE) (OTW) (*ECF 1*).

28. In this proceeding, Sheindlin represented IGS. See *Sheindlin Dec., ¶ 19*.

29. On July 20, 2020, Magistrate Judge Wang issued a report and recommendation (R & R) to grant defendant's motion to dismiss and convene a hearing to determine whether to issue a filing injunction against Brady. See *id., ECF 50*.

30. The R & R made several relevant findings: Brady is a "serial litigator" (*id.*, p. 2); he has been sanctioned in state-court because of his "dragging more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance . . ." (*id.*, pp. 2-3); Brady was warned by the court against further vexatious litigation (p. 5); and despite the warning, Brady filed the present action claiming the *IGS Realty I* verdict was fraudulently obtained and the underlying IGS lease agreements are invalid (*id.*, p. 4).

31. On September 8, 2020, Judge Engelmayer issued a decision and order (See *Brady v. IGS*, *2020 WL 5414683*) that made the following findings: "[The Court] adopts as accurate the statement of facts set out in the Report." (*Id.*, p. 2); a jury found Brady breached his contract to IGS by not paying the rent amounts owed under his guarantees. (*Id.*, p. 3); on Brady's appeal, the First Department affirmed in all respects, and the New York Court of Appeals denied leave to appeal. (*Id.*, p. 3); on September 5, 2018, that judgment was satisfied through the sale of Brady's cooperative apartment. (*Id*, p. 4).

32. Thereafter, Judge Engelmayer ordered Brady's action dismissed with prejudice based on the *Rooker-Feldman* doctrine, res judicata and collateral estoppel. See *id.*, p. 26.

33. On October 13, 2020, Judge Engelmayer issued a decision and order granting a filing injunction enjoining Brady from filing any new action in the Southern District of New York that relates in any way to the IGS Lease Agreements, the Personal Guarantees associated therewith, or Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to the IGS Lease Agreements, or any collateral actions arising from those agreements. See *Brady v. IGS*, 2020 WL 604964.

34. In support of the filing injunction, Judge Engelmayer made the following findings: in June 2015, a unanimous jury found Brady in breach of the Personal Guarantees of the IGS Lease Agreements and rejected Brady's defenses and counterclaims. (*Id., p. 2*); since this verdict, Brady has launched a series of actions collaterally attacking aspects of the state court proceedings. (*Id.*, p.3); most recently, Brady sued the IGS Defendants' lawyer in IGS Realty II concerning his role in the events complained of in that case. See *Brady v. Sheindlin*, No. 20 Civ. 7047, 6 (S.D.N.Y. filed Aug. 30, 2020) (*Id., p. 3*); Brady is already subject to one filing injunction to enjoin him from collaterally attacking adverse state-court

decision in which he, as here, "impugn[ed] the motivations and integrity of all the actors involved. *Brady v. Goldman*, No. 16 Civ. 2287 (GBD) (SN), 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3 2017)." (*Id.*, p.5); in 2019, Brady separately sued Justice Ostrager in this District, challenging his conduct in, and the outcome of, *IGS Realty I*. See *Brady v. Ostrager*, No. 19 Civ. 7122 (LGS), Dkt. 6. (*Id, p.5*); and further stated:

> Perhaps most troubling, in August 2020—after Judge Wang recommended the dismissal of Brady's claims without leave to replead, and after she ordered Brady to show cause why she should not recommend the imposition of a filing injunction—Brady filed yet *another* action concerning the IGS Lease Agreements. *See Sheindlin*, No. 20 Civ. 7047, Dkt. 1 (S.D.N.Y. filed Aug. 30, 2020); *see also id.*, Dkt. 6 ("*Sheindlin SAC*"). This time, he sued the attorney who had represented the IGS Defendants in *IGS Realty II*, Gregory Sheindlin. *Sheindlin SAC*. The claims in that action concern the same state-court adjudication of the validity of the IGS Lease Agreements and Brady's related Personal Guarantees as did *IGS Realty II*, albeit under the guise of different causes of action and legal theories, and against a different, but related, defendant. *See id.* ¶¶ 13–15, 40–63. Brady now highlights that this new case did not involve claims against judicial officers, *see IGS Realty II*, Dkt. 61, but that does not change the fact that he has continued to file vexatious, harassing litigation against the parties to these actions. <u>It also confirms a disturbing trend in which Brady drags parties into court whose only apparent wrong had been to represent his adversaries in litigation</u> (Underline added).

See *id.*, p.6.

### *Brady v. Sheindlin* Action (S.D.N.Y. 2019)

35. On August 30, 2019, Brady filed a complaint in federal court against Sheindlin. <u>See</u> *Brady v. Sheindlin*, 20 CV 7047 (S.D.N.Y.) (LJL) (*ECF 1*). Brady couched

his action as a claim for civil rights violation though, in actuality, it was another collateral attack on the jury verdict in *IGS Realty I*. *Id.*

36. On September 30, 2020, Brady filed an Amended Complaint (*Id., ECF 2*) that, in pertinent part, stated:

> ¶1. Defendant's Gregory Sheindlin and The Sheindlin Law Firm used false instruments in order to defraud the New York State Court and force the collection of $1,705,535.71 (EXHIBIT 1) from Plaintiff on September 5, 2018.
>
> ¶¶14, 15 [Paraphrased]. There was a trial on June 26, 2015 and Robert Fass was IGS' trial attorney.
>
> ¶24. Defendant Sheindlin was hired to do something Robert Fass would not do, namely to commit fraud on the New York State Court's and blatantly lie and assert that Question No. 1 of the June 26, 2015 Interrogatories meant that Brady was liable under the Personal Guarantees.
>
> ¶29. "Mr. Sheindlin deliberately and through the criminal fraudulent act described in this Complaint forced James and Jane Brady to sell their commercial co-op, which they used as their business to pay over $1.7 million dollars to a man Mr. Scheindlin [*sic*] knew was not entitled to a penny under the Personal Guarantees . . ."

37. On November 13, 2020, Sheindlin, filed a motion to dismiss. See *id. (ECF 14)*.

38. On December 1, 2020, Brady filed his opposition. See *id., (ECF 17)*.

39. The motion is pending.

40. On December 26, 2020, January 14, 2021 and January 28, 2021, Brady filed letters (2 pages) addressed to Hon. Lewis J. Liman, U.S.D.J., requesting the Court grant him permission to file a criminal complaint against Gregory Sheindlin for

stealing his life savings of over $1.7 million dollars on September 5, 2018. <u>See</u>

<i>id. (ECF 20, 21 and 22)</i>.

41.   The Court has not responded to Brady's three letters.

**Brady's Defamation _Per Se_**

42.   On or about December 16, 2020, Brady sent an email to Sheindlin stating: "*One*

*of my three videos of you on youtube stealing over $1.7 million dollars from me*

*September 5, 2018 is <u>getting tons of hits</u>.*" (underline added). <u>See</u> *Exh. 1 of*

*Sheindlin Decl. (¶ 21)*.

43.   On August 13, 2020, Brady used his internet account to publish (*aka "post"*) on

the *YouTube* internet site, with a "public" setting[3], three videos with the following

corresponding titles:

> *Video #1: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018*
>
> *Video #2: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018*
>
> *Video #3: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018.*

<u>*See*</u> *Exh. 2 to Sheindlin Decl.* (Screenshots of the three posted videos including

their title, posted date, viewer comments and Brady's replies).

---

[3] When uploading content to *YouTube*, the account holder (*i.e.*, Brady) has the option to click one of three choices for visibility: public, private or unlisted. The "public" setting allows for the content to be searched by, seen and shared with anyone. In other words, it allows for the greatest opportunity for dissemination of content.

44.   The videos have instigated viewers to post negative comments about Sheindlin.

See *Exh. 2 to Sheindlin Decl.*

45.   Brady posted a number of replies under the posted *YouTube* content including the

following five replies:

> *Justice requires Gregory Sheindlin to serve a long prison sentence and lose his law license so he can never inflict fraud schemes again.*

> *It's sickening that Gregory Sheindlin is such a psychopath that thought he could get away with this cruel scheme. 10 years minimum in prison is the medicine he needs.*

> *Gregory Sheindlin is totally corrupt piece of shit who stole over 1.7 million from me through a fraudulent scheme. He will get his.*

> *The worst is that it has been Federal Judges as well as State Judge's that Gregory Sheindlin has corrupted. It's all pay to play. I have this lowlife on my hook and he is going to be fried. 10 or 12 years in prison will protect the public."*

> *"Yup. Bribe money talks and the truth ignored in the courts." . . . Now Shady Sheindlin is going to learn "don't do the crime if you can't do the time."*

See *Exh. 2 (pp.3, 4, 5) of Sheindlin Decl.*

46.   On December 17, 2020, Sheindlin sent the following email correspondence to

Brady:

> *Dear Mr. James Brady,*

> *The posting of your statements in conjunction with the videos on YouTube constitute, per se, libel and defamation.* **It is demanded that you immediately remove them**. *As described in recent legal opinions, it has become your habit to unjustifiably impugn the motivations and integrity of others with who you disagree. See, Brady v. Goldman, No.*

> *16 Civ. 2287 (GBD) (SN), 2017 WL 496083 (S.D.N.Y. Feb 3, 2017). It is a reason why courts are issuing multiple filing injunctions that prohibit you from filing lawsuits. You will be subject to increasing consequences if you fail to take immediate action in compliance with this demand.*
>
> *Yours,*
>
> *Gregory Sheindlin*

<u>See</u> *Exh. 3 of Sheindlin Decl.*

47. On December 17, 2020, Brady sent the following email correspondence to Sheindlin:

> *Mr. Sheindlin,*
>
> *You did exactly what I claim you did to me in the youtube videos and in my complaint against, you. It's sick what you did not me and the public has a right to know.*
>
> *James H. Brady*

<u>See</u>, *Exh. 4 to Sheindlin Decl.*

48. On January 28, 2021, Sheindlin sent another email correspondence to Brady demanding he remove his defamatory statements from the internet. <u>See</u> *Exh. 5 of Sheindlin Decl.*

49. On January 28, 2021, Brady responded to Sheindlin's demand by sending an email correspondence ("January 28th Email") to forty-four (44) people, all of whom work in the news industry. <u>See</u> *Exh. 6 to Sheindlin Decl.*

50. In the Body of Brady's January 28th Email, he wrote: "*LOCK HIM UP !!! The third time will be the charm.*" <u>See</u> *Id.*

51. The January 28th Email attached a two-page letter that Brady authored and addressed to "Honorable Lewis J. Liman," a United States District Court Judge, and within the body of the letter Brady wrote:

> "[I]t has been proven, and is irrefutable, that Gregory Sheindlin stole my life savings of over $1.7 million dollars on September 5, 2018 solely by fraudulently representing that Question Number One on a June 26, 2015 Jury interrogatory sheet was a Jury finding that the personal guarantees were enforceable, and was a jury finding that my personal guarantee defenses were denied by the Jury when he knew Question Number one on the June 26, 2015 Jury interrogatories had absolutely nothing to do with these issues (emphasis added). . . . The above claim of irrefutable criminal activity by Gregory Sheindlin is very simple to FACT CHECK simply by looking at Doc. 6-3 of Plaintiff's Amended Complaint of September 30, 2020. . . . For a third time, I am pleading that without fear or favor this politically connected man be promptly held accountable for his irrefutable destructive acts."

<u>See</u> *Id.*

52. On February 3, 2021, Brady sent an email to Sheindlin stating:

> *Hi Greg*
> *As of this morning your three videos from September 5, 2018 no have a combined total of over 13,000 views. And that is just the tip of the iceberg!!!!*
> *Congratulations*
> *Jim*

<u>See</u> *Exh. 7 to Sheindlin Decl.*

53. As of February 5, 2021, according to the information on the YouTube site, there were, collectively, over 13,000 views of Brady's three video postings. See *Exh. 2 to Sheindlin Decl.*

54. By engaging in the conduct set forth above, Brady intentionally, maliciously and irreparably damaged Sheindlin's reputation, personally and professionally.

55. The content of Brady's expression is false and has been held to be false by court decisions which affirmed the state-court jury verdict and approved the collection proceedings in which Sheindlin engaged.

56. The falsity of Brady's allegations against Sheindlin have been established.

57. Brady acted with actual malice in that he acted with knowledge that the statements were false or with reckless disregard of whether they were false or not.

58. Brady is maliciously motivated to extort monies from Sheindlin by tarnishing the reputation of his good name and, furthermore, Brady intentionally intertwines his parent's well-known name within the defamatory statements to increase the scope of dissemination and damage.

59. Absent entry of a temporary restraining order, followed by preliminary and permanent injunctive relief, Brady will continue to engage in a campaign of defamation against Sheindlin.

## AS AND FOR A FIRST CAUSE OF ACTION

60. Plaintiff incorporates paras. 1-59 as if fully set forth herein.

61. Brady's is liable for defamation because Brady published (1) a false statement that tended to expose Sheindlin to public contempt, hatred, ridicule, aversion, or disgrace, (2) published it without privilege or authorization to a third party, (3) amounting to fault as judged by, at a minimum, a negligence standard, and (4) and constituted defamation *per se*.

62. Brady committed defamation *per se* as his published statements charged Sheindlin with one or more serious crimes and tended to injure him in his trade, business and profession.

63. Brady's August 13, 2020 published statements on YouTube falsely claim that Sheindlin stole $1.7 million dollars from him. See *Exh.7 to Sheindlin Decl.*

64. Said statement was published online and remains available for viewing by consumers of YouTube.

65. Brady's statements have exposed Sheindlin to public contempt, hatred, ridicule, aversion and disgrace as demonstrated by the public's comments on the YouTube internet site.

66. Said statements by Brady are categorically false as Sheindlin engaged in collection procedures consistent with the laws of the State of New York and the

sum he collected was determined by and through the justice system in which Brady participated.

67. Publication of the identified statement constitutes defamatory *per se* as it accuses Sheindlin of the commission of serious crimes, acts of moral turpitude and tends to injure him in his trade, business and profession, as an attorney, which requires the confidence and trust of potential clients, actual clients, courts, colleagues and the general public.

68. Brady's statements were uttered with knowledge of their falsehood as repeatedly determined by our courts.

69. Brady's statements were made with actual malice and an intent to harm Sheindlin's reputation as demonstrated by many factors including the following incontrovertible facts:

    a. Court decisions that informed Brady that his allegations of criminal conduct that impugned the motivations and integrity of anyone involved in the adverse stat-court decisions were false. See, *Brady v. IGS*, 19 cv 10622 (PAE) 2020 WL 6049649 [citing *Brady v. Goldman*, No. 16 Civ. 2287 (GBD)(SN) 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3, 2017)].

b. Court decisions that warned and sanctioned Brady for impugning the motivations and integrity of anyone involved with the adverse state-court decisions. *Id.*

c. On August 13, 2020, Brady published his defamatory statements on *YouTube* a short period of time after learning that Judge Magistrate Wang's report described the lack of merit in Brady's allegations relating to *IGS Realty I* and recommended the dismissal of his action with prejudice. *Brady v. IGS*, No. 19 cv 10622 (PAE) (OTW) (07/20/2020) (ECF 50).

d. On December 16, 2020, Brady sent an email to Sheindlin stating: "*One of my three videos of you on youtube stealing over $1.7 million dollars from me September 5, 2018 is <u>getting tons of hits</u>.*" (underline added) <u>See</u>, *Exh. 1 of Sheindlin Decl.*

e. Brady posted reply-statements on *YouTube* that reconfirmed his false statements and his intent for Sheindlin to be prosecuted for criminal conduct, be imprisoned and lose his law license. <u>See</u>, *Exh. 2 of Sheindlin Decl.*

f. Brady' posted reply-statements on *YouTube* that included accusations stating Sheindlin engaged in the serious crime of bribing judicial officials. See *Exh. 2 of Sheindlin Decl.*

g. On December 26, 2020, January 14, 2020 and January 28, 2020, Brady filed letters in an active court proceeding addressed to the pressing judge that requested the Court grant him permission to report Gregory Sheindlin to law enforcement authorities for stealing his money and engaging in fraudulent conduct during court proceedings. *Brady v. Sheindlin*, 20 CV 7047 (S.D.N.Y.) (LJL) (*ECF 20, 21 and 22*)

h. On January 28, 2021, Brady sent an emailed correspondence to forty-four (44) recipients affiliated with news outlets that contained statements accusing Sheindlin of stealing money and engaging in fraudulent conduct during court proceedings. See, *Exh. 5 of Sheindlin Decl.*

70. The content and circumstances underlying Brady's defamatory statements constitute outrageous conduct, which is malicious, wanton, reckless and perpetrated in willful disregard for Sheindlin's rights, thus warranting punitive damages.

71. The events underlying this case, many of which are established as a matter of law and/or otherwise uncontroverted, constitute extraordinary circumstances and there is no adequate remedy at law which can mitigate and prevent further irreparable injury to Sheindlin except for an injunction requiring Brady to remove any and all of his published statements that accuse plaintiff Sheindlin of stealing,

fraud, bribery or any other criminal or unprofessional acts relating to the *IGS Realty I* matter, and the injunction should prohibit Brady from publishing any such statements on any medium in the future.

72. Brady's unlawful conduct makes him liable to Sheindlin for compensatory and punitive damages in an amount exceeding $75,000.

## **AS AND FOR A SECOND CAUSE OF ACTION**

73. Plaintiff incorporates paras. 1-72 as if fully restated herein.

74. On January 28, 2021, Brady wrote and published defamatory statement when he sent email correspondence to forty-four (44) identified members of the news media that stated it had been proven that plaintiff "stole my life savings of over $1.7 million dollars . . ." See *Exh. 6 to Sheindlin Decl.*

75. On January 28, 2021, through email correspondence to forty-four (44) identified members of the news media, defendant wrote that plaintiff misrepresented to judicial authorities the meaning and substance of a jury verdict, allowing him to engage in "irrefutable criminal conduct." *Id.*

76. Said written statements represent libel and defamation *per se* as they falsely accuse plaintiff both of criminal activity with an element of moral turpitude and of unprofessional conduct in his profession as an attorney at law.

77. The defamation *per se* was written and published with knowledge of its falsehood as repeatedly determined by our courts and was made with actual malice in an

effort to embarrass plaintiff, as well as his family members, and to use his unlawful conduct to aid in his recovery of $1.7 million dollars.

78. Brady's conduct established actual malice, for all of the reasons described above including but not limited to the allegations set forth in paragraph 69.

79. Brady's conduct constitutes outrageous conduct, which is malicious, wanton, reckless and perpetrated in willful disregard for Sheindlin's rights.

80. Brady's unlawful conduct makes him liable to Sheindlin for compensatory and punitive damages in an amount exceeding $75,000.

## AS AND FOR A THIRD CAUSE OF ACTION

81. Plaintiff incorporates paras. 1-78 as if fully restated herein.

82. On or about January 13, 2021, Brady posted an advertisement ("The Ad") on Craigslist that purported to seek a litigation attorney to represent him in *Brady v. Sheindlin*. See *Exh. 8 to Sheindlin Decl.*

83. The Ad is viewable by the general public on the internet. See *id*.

84. Brady wrote and published the following statements in The Ad that constitute defamation *per se*:

> The case proves that Sheindlin used false instruments in a fraud scheme to collect over 1.7 million dollars on a personal guaranty for his client on September 5, 2018. The case has not broken in the news yet since it is being suppressed for this politically connected man but it will break very soon because the case is too scandalous to be ignored and over 7000 people have already learned about the case on youtube.

> . . . Also there are three under cover videos of Sheindlin from September 5,2018 as he was stealing the money that can be seen on YouTube if you type in the name Gregory Sheindlin.

85. Brady's statements constitute defamation *per se*.

86. Brady's statements were published with actual malice.

87. Brady's conduct constitutes outrageous conduct, which is malicious, wanton, reckless and perpetrated in willful disregard for Sheindlin's rights.

88. Brady's unlawful conduct makes him liable to Sheindlin for compensatory and punitive damages in an amount exceeding $75,000.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court [a] accept jurisdiction over this matter, [b] hear and decide this matter; [c] order Brady to remove his statements about Sheindlin from the internet including but not limited to from YouTube and Craigslist, and to retract his email dated January 28, 2021 to the same persons defendant sent it to in the first instance and/or through the present date; [d] temporarily, preliminarily and permanently enjoin defendant from uttering, writing, publishing or otherwise spreading false statements concerning plaintiff, his agents, assigns, those acting in concert with him or family members that in any way state or imply that Sheindlin engaged in unlawful, unethical or unprofessional conduct relating to any aspect of *IGS Realty I* or *Enforcement Proceeding*; [e] award plaintiff compensatory damages for the

embarrassment and other harms caused him by the referenced publications; [f]

award plaintiff punitive damages for the malicious, wanton, reckless and willful

violations of plaintiff's rights in which defendant has repeatedly engaged and [g]

enter any other order for relief as required by law or equity, including the

reasonable costs and disbursements arising from this litigation.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE, 3RD FLOOR
GOSHEN, NY 10924
(845)-294-3991
Sussman1@sussman.law

Counsel for Plaintiff Gregory Sheindlin