**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREGORY SHEINDLIN,

             Plaintiff,

v.

JAMES BRADY,

             Defendant.

-----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF A TEMPORARY RESTRAINING ORDER

### PRELIMINARY STATEMENT

Plaintiff recognizes the delicate balance between one person's right to freedom of speech and another's right to protect his good name. But here incontrovertible proof compels the conclusion that defendant James Brady ("Brady") committed and will continue to commit defamation *per se* with actual malice to harm the reputation of Plaintiff Gregory Sheindlin ("Sheindlin").

Underlying Brady's defamation are two New Yok State real estate-related litigations that did not end in Brady's favor. See *Brady v. Berman*, 18 cv 8459 (VEC) 2019 WL 4546535. In one of these cases, a unanimous petit jury found defendant Brady liable for money damages to IGS Realty Co, LP ("IGS"). See *IGS Realty Co, LP. v. James H. Brady*, Index No. 603561/2009 (Sup. Ct. N.Y. County) ("*IGS Realty I*"). Then, represented by Sheindlin, IGS entered judgment and commenced an

enforcement proceeding. See *IGS v. Brady*, Index No. 159554/2017 ("*Enforcement Proceeding*"). Pursuant to a court order (Goetz, J.), IGS collected $1,705,535.71 to satisfy the judgment. See *Enforcement Proceeding* (NYSCEF Doc. No. 64); and *IGS Realty I* (NYSCEF Doc. No. 345 [Satisfaction of Judgment]).

Thereafter, Brady embarked on an unlawful campaign in the state and federal courts to impugn the motivations and integrity of judicial officials, adversaries and their attorneys, including Sheindlin, who were involved with the adverse state-court decisions. See *Brady v. IGS*, 19 cv 10622 (PAE) 2020 WL 6049649 [citing *Brady v. Goldman*, No. 16 Civ. 2287 (GBD)(SN) 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3, 2017)]. It is for these reasons the mendacity of Brady's statements has already been adjudicated by numerous court decisions containing factual findings, repeated warnings, sanctions, and injunctions prohibiting Brady from commencing any more actions relating to his losses in the state-court adjudications. *Brady v. IGS, Id.*

Now, Brady has chosen a different strategy to attack his losses in state-court. He is engaging in a campaign of defamation to impugn the integrity and motivations of Gregory Sheindlin, the attorney who represented several of his adversaries in state-court proceedings. More specifically, on August 13, 2020, Brady committed *per se* defamation on the *YouTube* internet site by posting three videos with titles stating: "*Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on*

2

*September 5, 2018.*" See *Exh. 2 to Sheindlin Decl.* Brady's intent to harm Sheindlin's personal and professional reputation was further evidenced by his follow-up postings on *YouTube* that included the following: "*Justice requires Gregory Sheindlin to serve a long prison sentence and lose his law license so he can never inflict fraud schemes again.*" See *Exh. 2-6. to Sheindlin Decl.* To date, these videos have garnered over 13,000 views. See *Sheindlin Decl., ¶ 22.* On or about January 13, 2021, Brady committed *per se* defamation on the *Craigslist* internet site by posting an advertisement for an attorney to represent him that included a statement accusing Sheindlin of using false instruments in a fraud scheme to collect over 1.7 million dollars. See *Exh. 8 of Sheindlin Decl.* On January 28, 2021, Brady committed *per se* defamation when, in apparent response to Sheindlin's second demand for him to remove his defamatory statements from the internet, he authored an emailed correspondence to forty-four people who work in the news industry that accused Sheindlin of stealing his money, fraud and other unprofessional conduct during the state-court litigations. See *Exhs. 5 and 6 to Sheindlin Decl.*

The uncontroverted evidence proves that defendant Brady committed defamation *per se*. It also establishes Brady's actual malice, as a matter of law, in that he published his defamation despite his knowledge of numerous court decisions telling him that his claims were false. This case presents an extraordinary circumstance that not only warrants punitive damages against a vindictive,

3

disgruntled, serial litigant but requires an injunctive order directing Brady to remove the defamatory posts and prohibit him from future publications of similar statements.

## IGS Realty I

In June 2015, after a trial presided over by State Supreme Court Justice Judge Barry Ostrager, a unanimous jury found defendant Brady in breach of the Personal Guarantees of the IGS Lease Agreements and rejected all of his defenses and counterclaims. See *Brady v. IGS*, 19 Civ. 10142 (09/08/2020 at p.3).   On July 29, 2016, approximately one year later, IGS retained plaintiff Sheindlin to represent them at a hearing to determine their attorneys' fees and to settle judgment. *Sheindlin Decl.*, ¶ 7. On May 31, 2017, on behalf of IGS Defendants, Sheindlin filed judgment in the amount of $1,458,002.33 ("Judgment"). *Sheindlin Decl.*, ¶ 8; *IGS Realty I* (NYSCEF Doc. 331). On April 13, 2017, the Appellate Division, First Department unanimously affirmed Supreme Court's denial of Brady's motion that had sought to set aside the jury verdict. *IGS Realty I*, 149 A.D.3d 523 (1st Dept. 2017); and 32 N.Y.3d 927 (Aug. 30, 2018) [motion for re-argument and leave to appeal denied]. On June 7, 2018, the Appellate Division, First Department denied Brady's motion that attacked the verdict, holding his arguments were previously raised and rejected by it and thus barred by the law of the case. *IGS Realty I*, 162 A.D.3d 444 (1st Dept. 2018).   On October 23, 2018, the New York State Court of Appeals rejected Brady's motion

for re-argument and denied his application for leave to appeal. *IGS Realty I*, 32 N.Y.3d 1053.

### IGS Enforcement Proceeding

Based upon the jury verdict and subject to court approval, on October 27, 2017, Sheindlin represented IGS in the *IGS Enforcement Proceeding* against defendant Brady, as Respondent-Debtor, and naming over twenty respondents-creditors – each of whom was a creditor resulting from sanctions imposed against Brady by New York courts. See *Sheindlin Decl.*, ¶ 9; *James Brady v. Jeffrey Katz et al.*, Index No. 654226/2013 (01/30/2015) (NYSCEF Doc. 296)[1] and *James Brady v. 450 West 31st Street Owners Corp et al.*, Index No. 157779/2013 (09/10/2015) (NYSCEF Doc. 227)[2].

On May 23, 2018, the court (Goetz, J.) issued an order directing Brady to turn over the shares and proprietary leases in his commercial cooperative units

---

1.   In *James Brady v. Jeffrey Katz et al.*, Index No. 654226/2013 (01/30/2015) (NYSCEF Doc. 296), the court ordered Brady to pay sanctions to two defendants in the respective amounts of $79,263.87 and $79,263.87.

2.   In *James Brady v. 450 West 31st Street Owners Corp et al.*, Index No. 157779/2013 (09/10/2015) (NYSCEF Doc. 227), the court ordered Brady to pay sanctions to Defendants 450 West 31st Street Owners Corp. and its board members in the sum of $103,063.53, Defendants Owain Hughes Chodosh Realty Services Inc. and Jon Chodosh in the amount of $17,560.50 and Defendants Stanley Kaufman, Esq., Kaufman, Friedman et al., Vincent Hanley and Hanley & Goble in the amount of $53,844.10.

to the New York City Marshal and ordered that office to conduct a public auction and distribute the sale proceeds to pay any judgment debtor or lien holder. *Sheindlin Decl.*, ¶ 10; *IGS Enforcement Proceeding (NYSCEF Doc. No. 64)*. On September 5, 2018, prior to the public auction, James Brady sold his commercial cooperative apartment purportedly for $9.5 million dollars. *Sheindlin Decl.*, ¶¶ 11-13. Each of the above-described judgment debtors were paid from the process of this sale at the closing. *Sheindlin Decl.*, ¶ 5.

On behalf of IGS Defendants, the New York City Marshall collected $1,705,535.71 from the proceeds of the sale of Brady's commercial cooperative units. *Sheindlin Decl.*, ¶ 15. 17. On September 5, 2018, the Satisfaction of Judgment was provided to Brady's attorney and on September 19, 2018 it was filed in *IGS Realty I* (NYSCEF Doc. No. 345). *Sheindlin Decl.*, ¶ 17.

The state-court litigation having been concluded against him, defendant commenced a series of frivolous collateral attacks on that outcome. On September 17, 2018, Brady commenced an action against Geoffrey Berman, United States Attorney for the Southern District of New York. *Brady v. Geoffrey Berman et al.*, 18-cv-8459 (VEC) (*ECF 1*). On August 2, 2019, this court granted defendant's motion to dismiss, noting, "Plaintiff James. H. Brady, a serial litigant . . . brings this action for injunctive relief . . . seeking "protection" from two "admitted crimes that took place under the color of law."

Both "admitted crimes" consist of unfavorable judicial decisions issued by the New York State courts in a series of real estate-related litigations that did not end in Brady's favor." *Id.*, *2019 WL 4546535*.  The decision, *id.*, described plaintiff's allegations as follows:

> The "second undisputed crime," according to plaintiff, "was committed by Supreme Court Justice Barry Ostrager, Appellate Division, First Department judges Peter Tom, Barbara Kapnick, Richard Andrias, and Troy Webber, and the NYS Court of Appeals [when they] deliberately refused to apply the law to the admitted and proven facts" in *IGS Realty v. Brady*. Compl. ¶¶ 3, 37. As a result, plaintiff was required to "pay over $1.7 million dollars" to IGS Realty, which "destroyed [his] three meeting hall businesses because the Judges of the State of New York deliberately refused to address the merger clause of [his] three corporate leases, and have refused to apply the law that voids personal guarantees to the admitted facts as part of a retaliation scheme against [plaintiff]." *Id.* ¶ 37.

The district court held that Brady lacked standing to sue and issued a filing injunction issued in *Brady v. Goldman*, 2017 WL 496083, at 2, which was viewed as extending to Brady's claims against *IGS Realty*.

On July 30, 2019, just before the filing injunction, defendant Brady filed a 152-page Complaint against Hon. Barry R. Ostrager, J.S.C., collaterally attacking the jury verdict rendered in *IGS Realty I*. See, *Brady v. Ostrager*, 19 CV 7122 *(ECF 2)*.  In his Complaint, Brady alleged: (a) Justice Ostrager retaliated against Brady during the 2015 trial (*id.*, ¶11); (b) IGS and Justice Ostrager colluded to engage in improper conduct throughout the trial

(*id.*, ¶¶67-89) and (c) the Appellate Division acted improperly by deliberately refusing to adjudicate the Personal Guarantee defense (*id.*, ¶¶35, 60-61).

Judge Schofield dismissed this action for two overlapping reasons: judicial immunity and the *Rooker-Feldman doctrine* [citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, (2005)]. *Brady v. Ostrager,* 19-CV-7122 (LGS) (S.D.N.Y, Aug. 20, 2019); Aff'd, *Brady v. Ostrager*, (2d Cir., 11/02/20) 2020 WL 6387339.

On October 31, 2019, Brady filed a complaint in *Brady v. IGS*, 19 Civ 10142 (S.D.N.Y.) (PAE) (OTW), alleging civil rights violation which, in actuality, were another collateral attack on the jury verdict in *IGS Realty I*. In this proceeding, Sheindlin represented IGS.  On July 20, 2020, Magistrate Judge Wang issued a report and recommendation (R & R) to grant defendant's motion to dismiss and to convene a hearing to determine whether to issue a filing injunction against Brady. *Id., ECF 50*. The R & R made several relevant findings: "Brady is a serial litigator" (*id.*, p. 2); he has been sanctioned in state court because of his "dragging more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance . . ." (*id.*,  pp. 2-3); Brady was warned by the court against further vexatious litigation (p. 5); and despite the warning, Brady filed the present action claiming the *IGS Realty I* verdict was

fraudulently obtained and the underlying IGS Lease Agreements are invalid (*id.*, p. 4).  On September 8, 2020, Judge Engelmayer issued a decision and order dismissing defendant Brady's action with prejudice based on *Rooker-Feldman*, *res judicata* and collateral estoppel (*id.*, p.26). *Brady v. IGS*, *2020 WL 5414683*.  The Court stated: "[It] adopts as accurate the statement of facts set out in the Report" (*id.*, p. 2); a jury found Brady breached his contract to IGS by not paying the rent amounts owed under his guarantees (*id.*, p. 3); on Brady's appeal, the First Department affirmed in all respects, and the New York Court of Appeals denied leave to appeal (*id.*, p.3); on September 5, 2018, that judgment was satisfied through the sale of Brady's cooperative apartment (*id*, p. 4).

On October 13, 2020, the Court issued a decision and order granting a filing injunction enjoining Brady from filing any new action in the Southern District of New York that relates in any way to IGS's lease agreements, Brady's personal guarantees associated therewith, or Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to IGS' lease agreements, or any collateral actions arising from those agreements. *Brady v. IGS*, 2020 WL 6049649. The Court's decision made the following findings of facts in support of its

decision: in June 2015, a unanimous jury found Brady in breach of his personal guarantees for the IGS' lease agreements and rejected Brady's defenses and counterclaims. (*id., p. 2*); since this verdict, Brady has launched a series of actions collaterally attacking aspects of the state court proceedings. (id., p.3); most recently, Brady sued the IGS' lawyer in IGS Realty II concerning his role in the events complained of in that case. See *Brady v. Sheindlin*, No. 20 Civ. 7047, 6 (S.D.N.Y. filed Aug. 30, 2020) (*p. 3*); Brady is already subject to one filing injunction to enjoin him from collaterally attacking adverse state-court decision in which he, as here, "impugn[ed] the motivations and integrity of all the actors involved. *Brady v. Goldman*, No. 16 Civ. 2287 (GBD) (SN), 2017 WL 496083 at 2 (S.D.N.Y. Feb. 3, 2017)." (*id.*, p.5); in 2019, Brady separately sued Justice Ostrager in this District, challenging his conduct in, and the outcome of, *IGS Realty I*. See *Brady v. Ostrager*, No. 19 Civ. 7122 (LGS), Dkt. 6. (*id, p.5*); and further stated:

> Perhaps most troubling, in August 2020—after Judge Wang recommended the dismissal of Brady's claims without leave to replead, and after she ordered Brady to show cause why she should not recommend the imposition of a filing injunction—Brady filed yet *another* action concerning the IGS Lease Agreements. *See Sheindlin*, No. 20 Civ. 7047, Dkt. 1 (S.D.N.Y. filed Aug. 30, 2020); *see also id.*, Dkt. 6 ("*Sheindlin SAC*"). This time, he sued the attorney who had represented the IGS Defendants in *IGS Realty II*, Gregory Sheindlin. *Sheindlin SAC.* The claims in that action concern the same state-court

adjudication of the validity of the IGS Lease Agreements and Brady's related Personal Guarantees as did *IGS Realty II*, albeit under the guise of different causes of action and legal theories, and against a different, but related, defendant. *See id.* ¶¶ 13–15, 40–63. Brady now highlights that this new case did not involve claims against judicial officers, *see IGS Realty II*, Dkt. 61, but that does not change the fact that he has continued to file vexatious, harassing litigation against the parties to these actions. It also confirms a disturbing trend in which Brady drags parties into court whose only apparent wrong had been to represent his adversaries in litigation.

*Id.*, p.6.

On August 30, 2020, Brady filed a complaint in federal court against Sheindlin. *Brady v. Sheindlin*, 20 CV 7047 (S.D.N.Y.) (LJL) (*ECF 1*). This action by Brady was couched as a civil rights violation but, in actuality, it was another collateral attack on the jury verdict in *IGS Realty I*. On September 30, 2020, Brady filed an Amended Complaint that, in pertinent part, stated:

¶ 1. Defendant's Gregory Sheindlin and The Sheindlin Law Firm used false instruments in order to defraud the New York State Court and force the collection of $1,705,535.71 (EXHIBIT 1) from Plaintiff on September 5, 2018.

¶¶ 14, 15 [Paraphrased]. There was a trial on June 26, 2015 and Robert Fass was IGS' trial attorney.

¶ 24. Defendant Sheindlin was hired to do something Robert Fass would not do, namely to commit fraud on the New York State Court's and blatantly lie and assert that Question No. 1 of the June 26, 2015 Interrogatories meant that Brady was liable under the Personal Guarantees.

¶29. "Mr. Sheindlin deliberately and through the criminal fraudulent act described in this Complaint forced James and Jane Brady to sell their commercial co-op, which they used as their business to pay over

$1.7 million dollars to a man Mr. Scheindlin [sic] knew was not entitled to a penny under the Personal Guarantees . . ."

On November 13, 2020, Sheindlin, filed a motion to dismiss. *ECF 14.* On December 1, 2020, Brady filed his opposition. *ECF. 17.* The motion to dismiss is pending.

The above-described litigation history provides the necessary background for understanding the instant action.

On December 16, 2020, Brady sent an email to Sheindlin referencing the "tons of hits" regarding the videos of him on YouTube stealing over $1.7 million dollars. *Exh. 1 of Sheindlin Decl.* Sheindlin observed the defamatory postings. *Sheindlin Decl, ¶ 21.*

On August 13, 2020, notwithstanding the judicial findings described above, Brady posted three videos on *YouTube*, each with the same caption: "*Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018.*" *Exh. 5 to Sheindlin Decl.* (Screenshots of the three posted videos, viewer comments and Brady's replies).

The next day, December 17, 2020, Sheindlin sent the following correspondence, via email, to Brady.

Dear Mr. James Brady,

*The posting of your statements in conjunction with the videos on YouTube constitute, per se, libel and defamation.* **It is demanded that you immediately remove them**. *As described in recent legal opinions, it has become your habit to unjustifiably impugn the motivations and integrity of others with who you disagree. See, Brady v. Goldman, No. 16 Civ. 2287 (GBD) (SN), 2017 WL 496083 (S.D.N.Y. Feb 3, 2017). It is a reason why courts are issuing multiple filing injunctions that prohibit you from filing lawsuits. You will be subject to increasing consequences if you fail to take immediate action in compliance with this demand.*

*Yours,*

*Gregory Sheindlin*

*Exh. 3 of Sheindlin Decl.*

On December 17, 2020, Brady responded, via email, with the following statement that amounted to a refusal to remove the defamatory statements *Exh. 4 to Sheindlin Decl.*

*Mr. Sheindlin,*

*You did exactly what I claim you did to me in the YouTube videos and in my complaint against, you. It's sick what you did not me and the public has a right to know.*

*James H. Brady*

According to the publicly viewable *YouTube* information, collectively, there have been over 13,000 views of the videos.

The videos have garnered negative comments from viewers. *See Exh. 2 to Sheindlin Decl.* (Screenshot on 02/03/2021 of *YouTube*'s published video content for the three videos).  For example, the first comment on Video #1 states (*p. 1*): "*This is the first time I have heard of this. It saddens me that one of their kids has taken the wrong path in life. He should be in prison for this, but I suppose his name kept him from going to prison. So sad.*"

Brady uses the viewers comments as an opportunity to post additional defamatory statements and incite the public about his prior statements including claims of fraud and bribery of judges. For example, Brady published the additional reply-statements on *YouTube*:

> *Justice requires Gregory Sheindlin to serve a long prison sentence and lose his law license so he can never inflict fraud schemes again.*
>
> *It's sickening that Gregory Sheindlin is such a psychopath that thought he could get away with this cruel scheme.  10 years minimum in prison is the medicine he needs.*
>
> *Gregory Sheindlin is totally corrupt piece of shit who stole over 1.7 million from me through a fraudulent scheme. He will get his.*
>
> *The worst is that it has been Federal Judges as well as State Judge's that Gregory Sheindlin has corrupted. It's all pay to play. I have this lowlife on my hook and he is going to be fried. 10 or 12 years in prison will protect the public.*"

> *Yup. Bribe money talks and the truth ignored in the courts." . . . Now Shady Sheindlin is going to learn "don't do the crime if you can't do the time.*

*Exh. 2 (pp.3, 4, 5) of Sheindlin Decl.*

On January 27, 2021, Sheindlin sent the following demand, via email correspondence, for Brady to remove the defamatory publications on *YouTube*:

> *Mr. Brady,*
>
> *This is a final demand for you to fully and permanently remove the defamatory statements you posted on YouTube, i.e., "Judge Judy's Son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018." It is clear that the main motive for your statements was to damage me and my reputation. I will seek all appropriate legal remedies including an injunctive order and punitive damages if you do not immediately comply with this demand.*
>
> *Yours, Gregory Sheindlin*

*Exh 5 to Sheindlin Decl.*

On January 28, 2021, Brady sent an email correspondence to forty-four recipients, all of their email addresses indicate that the recipients are affiliated with news organizations. *Exh. 6 to Sheindlin Decl.* The body of the email stated: a "*LOCK HIM UP!!! The third time will be the charm." Id.* Attached to the email was a two (2) page letter addressed to "Honorable Lewis J. Liman" which states in part:

> *[I]t has been proven, and is irrefutable, that Gregory Sheindlin stole my life savings of over $1.7 million dollars on September 5, 2018 solely by fraudulently representing that Question Number One on a June 26, 2015 Jury interrogatory sheet was a Jury finding that the personal guarantees were enforceable, and was a jury finding that my personal guarantee defenses were denied by the Jury when he knew Question Number one on the June 26, 2015 Jury interrogatories had absolutely nothing to do with these issues (emphasis added). . . . The above claim of irrefutable criminal activity by Gregory Sheindlin is very simple to FACT CHECK simply by looking at Doc. 6-3 of Plaintiff's Amended Complaint of September 30, 2020. . . . For a third time, I am pleading that without fear or favor this politically connected man be promptly held accountable for his irrefutable destructive acts.*

*Id.*

And, most recently, as set forth fully in the Complaint, ¶¶ 82-84, Brady has taken to advertising for an attorney through continued libelous references to plaintiff, this time in speech acts directed to plaintiff's professional colleagues. *Sheindlin Decl., ¶¶ 28-29.*

## **LEGAL ARGUMENT**

## **PLAINTIFF MEETS THE STANDARDS FOR A TRO**

To obtain a TRO, the movant must demonstrate a substantial likelihood of success on the merits, irreparable harm absent the entry of an injunction and a tipping of the equities in his/her favor. *Invesco Inst. (N.A.), Inc. v. Deutche Inv. Mgt. Ams., Inc.,* 74 A.D.3d 696. 697 (1st Dept 2010).

Here, indisputably, defendant initiated and disseminated false statement that plaintiff stole $1.7 million, engaged in fraudulent schemes and

bribed judges.   The statements are known to be false to its speaker.   It is repeated maliciously to damage Gregory Sheindlin professionally and personally.   The publications alleging theft, fraud and bribery obviously relate to the plaintiff and were published to third parties with consequent injuries. *Salim v. Manczur*, 2012 NY Slip Op 32146 (N.Y. Sup. Ct., N.Y. Cty. 2012).

Defendant's statements here are defamatory *per se* because they accuse plaintiff of a serious crime and tend to injure him in the practice of his profession by claiming that he stole monies, engaged in fraudulent schemes and bribed judges while engaging in his work as an attorney.   *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992).

Plaintiff's complaint demonstrates that defendant published both statements to third parties and his use of internet platforms such as *YouTube*, *Craigslist* and electronic mail assures continuing dissemination of the mendacious and injurious messages he has already published.   Where statements are *per se* defamatory, as here, injuries are presumed and need not be separately established.   *Martino v. HV News, LLC*, 114 A.D.3d 913, 913 (2d Dept 2014).

After defendant has been barred from bringing suits like those discussed above, he has continued his current baseless suit against the plaintiff herein and has

used that suit as a foil for making and then publicizing to 44 journalists his defamatory statements.

Second, plaintiff is a practicing attorney and is being professionally impugned by the defendant. It is impossible to determine the exact nature of the harm to plaintiff's profession and business from these publications, read by thousands of people, will cause, making money damages an insufficient remedy. Plaintiff primarily practices personal injury and criminal defense. These types of allegations leveled by Brady has may prevent potential clients from consulting with or retaining plaintiff, cause undermining of confidence with current clients, effect an witnesses willingness to trust and speak with plaintiff, interfere with the confidence necessary to work with colleagues and courts and, overall, has the potential to effect litigants' right to full and fair justice. With this in mind and in light of the demonstrably false nature of the claims defendant insists on repeating, his conduct is best understood as an attack on the judicial system itself and his related false speech acts should be enjoined because ongoing harm to business reputation is a sufficient basis for entering preliminary relief against defamatory speech. *Aon Risk Servs. v Cusack*, 102 AD3d 461, 463-464 [1st Dept 2013]; *Henry v. Gustman*, 2018 NY Slip Op 31914[U], *5 [Sup. Ct. Kings Cty. 2018].

Third, a person has no legally cognizable interest in spreading lies which impugn another's character and are based on demonstrably false claims. *Sachs v. Matano*, 2105 NY Slip Op 25355 (Sup. Ct. Nassau Cty. 2015). This is not about suppressing free speech. It is about limiting speech which is inarguably false, has been so established through a myriad of court decisions and appeals and is, in that context, intended only to harm plaintiff's reputation without any arguable factual basis. In such an instance, the balance of equities tilts sharply to protecting the blameless from the unpredictable effects of defamatory utterances, whether in spoken or written form.

Injunctions against such speech acts have been entered and upheld. *Dennis v. Napoli*, 148 A.D.3d 446, 447 (2017), *Bingham v. Struve*, 184 A.D.2d 85 (1st Dept 1992).

We note cases which set a very high standard for prior restraints of speech acts. But, here, the defamatory utterances have already occurred, and their public availability perpetuates the harm done to plaintiff. This is not about prior restraint, but an order requiring the defendant to desist from engaging in speech acts which have already been determined to be false and are plainly per se defamatory. Cf., *Brummer v. Wey*, 166 A.D. 2d 475, 89 N.Y.S.3 11 (1st Dept 2018). These speech acts do not represent someone's opinion, however offensively expressed, about the validity of an arbitral decision, *Brummer,* but rather accusations of crimes, i.e.,

stealing against an attorney.  Such private statements may be enjoined where they carry the substantial threat, as here, of injury to reputation which cannot reasonably be compensated. *Bingham, supra.*

Finally, while plaintiff recognizes that prior restraint of speech of even defamatory speech requires extraordinary circumstances, those exist here.  Prior to the publication of any of his defamatory statements, defendant participated as a litigant in federal and state court actions.  This eventuated in decisions in both fora which expressly warned and then sanctioned defendant for making accusations of criminality and baselessly impugning the motives and integrity of anyone involved in the prior state-court litigations. Likewise, this situation appears unique as defendant accused all levels of the judicial system including trial judges, appellate judges, U.S. Attorneys, adversaries, and their lawyers, of baselessly engaging in criminal activities.  It cannot be over-emphasized that Brady's ongoing attacks are best understood as an attack on the judicial system itself. State and federal courts have issued filings injunctions, themselves entered only in extraordinary circumstances, yet they did not stop defendant.  Instead, he has pivoted and is now publishing defamatory remarks in the court of public opinion. The gravamen of defendant's conduct requires the Court to issue a temporary, preliminary, and permanent injunction.

## **CONCLUSION**

## CONCLUSION

A TRO should enter followed by a preliminary injunction enjoining the harmful, tortious, and non-privileged speech acts in which defendant continues to engage.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
1 RAILROAD AVENUE, 3RD FLOOR
GOSHEN, NY 10924
(845)-294-3991
Sussman1@sussman.law

Counsel for Plaintiff Gregory Sheindlin

Dated: February 8, 2021