UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

GREGORY SHEINDLIN,  INDEX No. 21-cv-01124

        *Plaintiff*,

  v.

JAMES H. BRADY,

        *Defendants.*

_____X

## **DEFENDANT'S AMMENDED OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER**

There is nothing online about Gregory Sheindlin that is not true.

There is nothing online about Gregory Sheindlin that is not asserted and proven through the exhibits provided by Brady in the case of case of *James H. Brady v. Gregory Sheindlin*, 20-cv-7047 (LJL).

Truth a full defense against Sheindlin's attempt to censor Brady's First Amendment right to free speech.

The case against Gregory Sheindlin boils down to one undisputed and indisputable crime: that Sheindlin destroyed the Brady's family business, forced the sale of our commercial apartment which we used as the event Space Studio 450 and stole over $1.7 million dollars by fraudulently representing that Question Number One

1

on a jury interrogatory sheet was a jury finding that the personal guarantees were enforceable when he knew that Question Number One was nothing more than a finding (based on false law given to the jury) that the leased promises were being used as banquet halls rather than meeting halls.

Sheindlin also knew that the jury never rejected Brady's constructive eviction or other defenses since those questions failed to show up on the interrogatory sheet although Judge Ostrager said the issue needed to be considered and answered before there could be a finding that the personal guarantees were enforceable.

The evidence presented by Brady in *James H. Brady v. Gregory Sheindlin*, 20-cv-7047 (LJL) proves that at the same exact time Sheindlin was fraudulently representing through "implication" that Question Number One on the Jury interrogatory sheet was a finding that the personal guarantees were enforceable and was a rejection of Brady's defenses, the landlord's other attorney, Robert Fass, was admitting that Question Number One was nothing more than a jury finding (based on the false law given to them by Judge Outrage) that Brady's corporate tenants were using the demised premises as meeting banquet halls as opposed to meeting halls.  This is proven below.

In his January 5, 2018 OPPOSITION TO DEFENDANT- APPEPLLANT'S MOTION FOR LEAVE TO APPEAL (Exhibit 1), Robert Fass, IGS Realty's other attorney, admitted that Question No. 1 of the Interrogatories pertained to a finding of

whether Plaintiff's corporate tenants were operating as meeting halls or banquet halls, which had absolutely nothing to do with whether or not the Personal Guarantees were enforceable. This fact is proven by a reading of the headings from Robert Fass as shown below:

> "THE COURT'S JURY CHARGE REGARDING THE DIFFERENCE BETWEEN 'MEETING FACILITIES' AND 'BANQUET FACILITIES' WAS CORRECT UNDER THE APPLICABLE PROVISIONS OF THE NEW YORK CITY ZONING RESOLUTION AND BUILDING CODE"

On page 7, Mr. Fass wrote the following heading:

> "DEFENDANT- APPELLANT WAS NOT SURPRISED BY THE FACT THAT THE LEGALITY OF HIS USE WOULD BE LITIGATED"

And on page 9 Mr. Fass had the following heading:

> "THE APPELLATE DIVISION DID NOT REVERSE THE JURY FINDING THAT THE DEFENDANT- APPELLANT WAS OPERATING AS AN ILLEGAL BANQUET FACILITY"

Robert Fass's admissions further prove that the Sheindlin's October 26, 2017 Article 52 *Petition* was fraudulent misrepresentation of the jury findings. Just like Robert Fass, Sheindlin knew Question No. 1 did not find that Brady was liable to IGS Realty, and that Questions Number Two and Three were not findings rejecting Brady's defenses to the personal guarantees. Yet Sheindlin committed fraud on the New York State Courts by using these three jury findings as the false instruments to force the sale

of Brady's business and to pay IGS Realty over $1.7 million dollars on September 5, 2018.

Brady has a Constitutional right to tell his story to the public, and nothing said online was untruthful or ever disputed my Gregory Sheindlin since the evidence of what he did is undisputable and proven through the court filings made by the landlord's other attorney Robert Fass.

Brady has a First Amendment right to tell people of the proven fraud scheme committed and masterminded by Gregory Sheindlin.

Further, Brady's claims are not "inarguably false," as Mr. Sheindlin and his attorney Michael H Sussman falsely assert in their request for a TRO.

 Judge Liman has had the case *James H. Brady v. Gregory Sheindlin*, 20-cv-7047 (LJL) for many months and has not issued a ruling that Brady's claims are false, and cannot issue a truthful Decision that anything said by Brady in the three YouTube videos are untruthful or defamatory because Judge Liman was presented with irrefutable proof that Gregory Sheindlin destroyed Brady's business and stole over $1.7 million dollars through a fraud scheme Sheindlin masterminded.

The fraud scheme created by Gregory Sheindlin is so irrefutable that not even his own mother, Judge Judy, would come to his defense.  This email from February 9, 2021 shows that a news agency named New Jersey News called both Gregory Sheindlin and

the Judge Judy Show and they both refused to comment on Gregory Sheindlins fraud scheme. The emails also show that excuses were then made for New Jersey News to kill the story. One excuse they used to kill the story was to say they had fear of being sued.

> On Tue, Feb 9, 2021 at 5:47 PM New Jersey News <8f57b8ce41223d409ff7b135f72619f3@reply.craigslist.org> wrote:
>
> Jim, we have yet to hear from him and we also tried to reach out to his mom no reply from her either we will be in touch soon
>
> On Wed, Feb 10, 2021 at 11:56 AM New Jersey News <8f57b8ce41223d409ff7b135f72619f3@reply.craigslist.org> wrote:
> Hi,
> We are trying to gather as much information as we can so that we don't have any trouble, or lawsuit when we run with the story
>
> On Tue, Feb 9, 2021 at 7:23 PM craigslist 7272312814 <8f57b8ce41223d409ff7b135f72619f3@gigs.craigslist.org> wrote:
>
> Hi
>
> You did not hear back from Gregory Sheindlin or his mother but you scared the hell out of Gregory with your call and yesterday he filed a federal complaint against me with an emergency request that the Youtube Videos come down immediately. THAT'S A STORY.
>
> In other words he is now trying to silence me and he is panicked.
> Attached is his complaint and an order to show cause where he is crying like a baby to have the YouTube videos down and to stop the craigslist post that led you to my story.
>
> In addition to the complaint and order proposed restraining order is a letter I wrote to the court last night saying why the New York Court does not have jurisdiction over me.
>
> In the event that I am told to take down the videos that is when the story will really heat up because the videos are staying up because the statements are all true.
>
> Finally, you really don't know what a huge story this is and all the other hell I have fought back against. I created the website bullyjudges.com in 2012 where I store

evidence of corruption by judicial officials and others.  You will see no one has bigger balls than me.  I am truth to power.  Look at the video from May 16, 2018 and you will see a video of Gregory Sheindlin that day.  The videos show the judges that I exposed on the website retaliated and sat there silent and refused to adjudicate the issue before them because they all know the personal guarantees were void by the landlord's subsequent actions

And there is a video from January 17, 2018.  Check me confronting them . That is the air rights case, that's another story!!!

Anyway as I said, now that NEW JERSEY NEWS called them they panicked and wanted the tapes taken down .THAT WILL NOT HAPPEN

Thanks

Jim Brady


Similarly, the New York Post emailed me on February 12, 2020 asking to comment on a story they were on deadline of 5:30 pm to print.  When my claims against Sheindlin checked out and his false claims against me were disproven this story was also killed.

On Fri, Feb 12, 2021 at 11:54 AM Kathianne Boniello <kboniello@nypost.com> wrote:

My name is Kathianne Boniello, I'm a reporter with the NY Post.  I'm reaching out for comment in regard to the defamation lawsuit filed against you by Gregory Sheindlin.

Court records show you've repeatedly brought the same claims in various courts but consistently lost.  Mr. Sheindlin says the YouTube videos and Craigslist ads you've posted are simply defamatory and untrue.

What's your response to the allegations?  I'm on deadline today, Friday, Feb. 12 and would appreciate any help.

Kathianne Boniello
NY Post Reporter
kboniello@nypost.com

The story in The New York Post was to be a negative portrayal of me and was to advance Sheindlin's false narrative of defamatory conduct against me and his false narrative that I lost the IGS litigations.  When Sheindlin's story did not prove true, the story was killed.

The internet permits Brady the opportunity to tell the truth and expose the corruption of politically connected billionaires like Sheindlin and their control over the courts, law enforcement and the media.

The videos posted online reflect the truth of what occurred on September 5, 2018. Sheindlin was all smiles as he was destroying the life and livelihood of me and my family by fraudulently misrepresenting that Question No. 1 of the jury interrogatories was a jury finding that the personal guarantees were enforceable when he knew that Question Number One was nothing to do with whether the personal guarantees were enforceable.

The three questions presented to the jury at the 2015 Trial were the following (Exhibit 2):

> 1)  Do you find in favor of the plaintiff IGS Realty on its claim against the defendant for breach of contract?
>
>> The jury held Yes and awarded Defendant $541,758.62.
>
> 2)  Do you find in favor of the defendant in connection with his claim that plaintiff breached the implied warranty that the premises were fit for the use stated in the leases?

The jury held No.

3) Do you find in favor of the defendant on the claim that plaintiff IGS Realty fraudulently induced him to sign the leases and guarantees?

The jury held No.

These questions in the Interrogatories had nothing to do with whether the Guarantees were enforceable. The answer the jury gave in Question 1a was in response to the following statement made by Judge Ostrager as part of the jury instruction on June 26, 2015 (Exhibit 3):

> The Plaintiff asserts that Mr. Brady's corporations did not use the premises as a meeting hall, but instead used them as banquet halls. <u>It is for you to decide whether the premises were fit for use as a meeting hall, and if so whether they were used as meeting halls.  If you find that the premises were not used as meeting halls, Mr. Brady cannot recover any damages on the fraudulent inducement claim</u>.  (Transcript, 414).

As part of this Courts truth seeking role the Court must certainly ask Mr. Sussman to explain during oral arguments on February 26, 2021 how it was NOT a fraud scheme to force the sale of Brady's family business and collect over $1.7 million dollars from Brady using question number one on a Jury interrogatory as the bases for these actions when it was proven through the papers filed by IGS Realty attorney Robert Fass that Sheindlin knew the question had nothing to do with the personal guarantees.

IGS Realty filed its *Complaint* on August 8, 2014 seeking to enforce the Guarantees and nothing more. There were no allegations of any wrongdoing on the part of James H. Brady, nor any of the three Tenant corporations in the *Complaint*.

Plaintiff filed a *Verified Answer* on August 21, 2014, which included five Affirmative Defenses and five counter-claims.

Plaintiff's Affirmative Defenses: 1) Public Policy; 2) Increasing the Risk under the Guarantees and Underlying Leases; 3) Constructive Eviction; 4) Frustration of Purpose; and 5) Fraudulent Inducement of the Guarantees and Underlying Leases.

Plaintiff's counter-claims: 1) Fraudulent Inducement of the Guarantees and Underlying Leases; 2) Gross Negligence; 3) Negligence; 4) Breach of Warranty; and 5) Fraudulent Inducement in Procuring the Surrender of the Leases.

IGS Realty's *Reply Brief* filed September 29, 2014 makes the admission that James H. Brady conducted due diligence prior to signing the Leases, and that the building was compliant with fire safety laws:

> 4. Denies the allegations of paragraph 41, 42 and 43, except admits that Brady conducted due diligence.
>
> 5. Denies the allegations of paragraph 45, except admits that the building complied with fire safety laws and that there were no violations relating to office use in the building.

Robert Fass's June 26, 2015 closing arguments included the following admissions of what the Landlord did after the leases were signed (R. 882):

> "So let's being at the beginning. In 2001 Mr. Ifrah placed an ad in the New York Times. He (Brady) goes to the space, checks it out, and puts a deposit down a check on one of the spaces. Then speaks with his father who has great experience in real estate who tells him this is in the special garment district for zoning, so he better check out whether his use is permitted.
>
> "So he puts a stop on the check and tells Mr. Ifrah he wants to do his due diligence, which he does. And he checks the whole building from top to bottom, legal and physical conditions, and concludes that everything is fine. The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition. So then he writes another check and rents the space. After that in the same year and the following year he rents two other spaces.
>
> "He also gets permits to construct meeting halls representing to the Building Department it's on the section that covers meeting halls, section of the regulation. And he gets public assembly permits also for meeting hall use. The last certificate of occupancy that he got expired in 2007."

Further in his closing arguments, Mr. Fass admits openly that Mr. Ifrah changed the risk under the Leases and breached the contract:

> There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of fines to do it. He spent a lot of money to bring it into legal condition, to actually rent full offices which are far more valuable than anything else. (Transcript, June 26, 2015, 380:23 – 381:3). (R.883)

These admissions along with the Landlord's admitted unlawful conduct after that proved a total failure of consideration since these acts resulted in Plaintiff not being able to get any more temporary Certificates of Occupancies after December 2007.

Applying the law to these admissions by IGS Realty shows in black and white that the personal guarantees were voided by the landlord's actions subsequent to signing the leases.

> "A guaranty must be construed 'in the strictest manner' (White Rose Food v. Saleh, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform. An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration. See <u>White Rose Food v Saleh</u>, 99 NY2d 589 [2003]; <u>Davimos v Halle</u>, 35 AD3d 270 [2006.])."
>
> "There can be no doubt that a guarantor, when sued alone by the creditor, can successfully resist by showing that the creditor, on his part, totally failed to perform his obligations to the principal. In other words, the guarantor may always assert a total failure of consideration. This is because the guarantor is not liable unless the principal is bound (4 Williston Contracts (rev.ed) 1213)."

Applying the law to these admissions voided the personal guarantees. Whatever the "reason" for Mr. Ifrah's transgressions, the operative fact is that by breaking the law in this manner and unlawfully converting the building to offices, Mr. Ifrah indisputably breached the lease with Mr. Brady by changing the "as is" legal condition from what was agreed to in the leases.

Any change in the "as is" condition would have to be in writing. *Mr. Fass explains the reason Mr. Ifrah changed the legal "as is" condition and broke the leases: it was simply more profitable* – had Mr. Ifrah not broken the lease, Mr. Fass argues, the Landlord would have gone bankrupt:

11

> Now, you also find that the reason why Mr. Ifrah decided to rent office space now, this district was originally designed to preserve garment manufacturing factories. Garment manufacturing that used to be in New York are now, as you probably know, in Singapore, Malaysia, China, everywhere but here.
>
> So Mr. Ifrah had choice; he could rent to other uses, some of which were allowed in the district and some of which weren't, like offices; or he could go bankrupt. As a matter of fact, he did go bankrupt and then could survive only because he rented these other uses. These uses were also uniformly done in the district by everyone else because otherwise they'd go out of business. There were no factories.

The above admissions alone voided the personal guarantees were voided as matter of law and public policy. The landlord changed the building from a legal to an illegal office building. Only through a grotesque fraud scheme has this fact been ignored by state and federal judges.

Rather than apply the law to the admitted facts, the trial transcripts proves the subject matter of the trial completely changed to being an issue of whether Brady's corporate tenants were operating as banquet or meeting halls.

False law was given by Judge Ostrager that a meeting hall could only consist of patrons passively facing one direction. The interrogatories instructed the jury to find in favor of IGS Realty even after the floorplan was presented showing this was

The floorplan of the New York City Department of Buildings was discarded in retaliation for Brady not accepting Judge Otrager's June 23, 2015 threat to accept the landlord's $50,000 offer to settle. (Exhibit 4).

12

The other arguments made by Mr. Sussman and Mr. Sheindlin prove that the use of the politically-connected "Sheindlin" name and money has lead a federal Judge and magistrate judge to make claims that are irrefutably big lies as they try to protect Gregory Sheindlin and destroy Brady.

The evidence proves irrefutably Judge Engelmayer and Magistrate Wang are clearly and obviously being "accessories after the fact" culpable conspirators as they repeatedly lie and claim in the September 8, 2020 Amended Decision that: 1) there was a jury finding that the personal guarantees were enforceable; and 2) that Brady's constructive eviction defense was rejected when they both know these issues were not presented to or addressed at all by the jury.

There were only three questions asked of the jury and none of them pertained to the issue of the personal guarantees or the constructive eviction issue but as "culpable accessories after the fact" conspirators they are shown writing their own fictional story as to what was determined by the Jury with the intent of their fictional story being used to help Sheindlin get away with his criminal conduct. Sheindlin never made those claims in state Court. All that was ever said by Sheindlin is State Court was the same statement that is shown in paragraph six of his February 5, 2021 Declaration. (Document 4-2).

The only thing Sheindlin states in paragraph six is the following:

> "On June 26, 2015, a jury rendered a unanimous verdict in favor of IGS's claims and denied Brady's two counterclaims for Breach of Warranty and fraudulent inducement."

The above statement is deliberately very vague. Sheindlin never said in state court and he never stated on his February 5, 2020 Declaration anything about the jury finding in IGS favor on the issue of the personal guarantees, and he never said that the Jury rejected plaintiff's constructive eviction defense since such assertions are irrefutably false just by looking at the three question jury sheets

The evidence above proves that while Mr. Sheindlin never actually said in State Court or in his February 5, 2021 Declaration that the jury found in favor of IGS Realty on the issue of the personal guarantees or that the Jury rejected Brady's constructive eviction defense because its plain these issues were never presented to the state Court Jury Magistrate Wang and Judge Engelmayer advance these fictional assertions as two accessories after the fact.

In the moving papers, Mr. Sheindlin and Mr. Sussman try to use statements made by Judge Englemayer and Magistrate Wang in the September 8, 2020 Decision as evidence of Mr. Sheindlin's innocence when the statements made by Judge Engelmayer and Magistrate Wang do nothing more then prove that they are corruptible accessories after the fact.

Indeed, on page 3 and 11 of the October 8, 2020 Amended Decision, Judge Engelmayer adopts Magistrate Judge Wangs false claim that the Jury "rejected" Brady's constructive eviction defense when they both knew the constructive eviction defense was never even presented to the jury although the jury was told that the constructive eviction defense was required to be evaluated and rejected before the landlord could collect.

It should be noted for the record that the reason the September 8, 2020 Decision is an amended decision is because I corrected Judge Engelmayer and told him his September 5, 2020 Decision, which included a filing injunction was inappropriate and that it could not be issued since Judge Wang had not made a decision yet on my objections to her Report that Englemayer issue a filing injunction against James H. Brady barring any claims.

The filing injunction was written with the criminal intent of leaving me destroyed.

In the October 8, 2020 Order, I am torn to shreds and called a serial litigant and all the other false claims created by politically-connected people and their law firms.

All the other people in the office on September 5, 2018 were other people my wife and I were forced to pay that were not entitled to a penny.

Mr. Sussman speaks of all the other people that Brady was forced to pay over $500,000 on September 5, 2018 through another fraud scheme where politically-

connected billionaires and their lawyers totally corrupted state and federal judges the same say Sheindlin corrupted state and federal judges to help him get away with his crime.

Sheindlin facilitated that I be forced to pay over $500,000.00 to the billionaire builders and their law firms after I refused to waive my unit's rights for free when asked in 2012.  (Exhibits 5, 6 & 7).

State and Federal Judges were in on that criminal scheme, and Judge Engelmayer and Magistrate Moses are proven corrupt and proven to be accessories after the fact that created a fictional version of what was and what was not determined by the jury so that at the same time they help the billionaire get away with stealing over $1.7 seven million dollars this evil judge and Magistrate can leave me defamed and penniless.

Mr. Sheindlin and Mr. Sussman make another argument pertaining to the case of *James H. Brady v. Geoffrey Berman*.  He quotes as true evil comments of Magistrate Moses.  Magistrate Moses has absolutely no problem making false personal attacks against me with the intent of leaving me defamed and destroyed and penniless.

The defamatory comments made by Magistrate Moses were not adopted by Judge Caproni.  None of the randomly assigned judges ever made defamatory false claims against me.

The case of *James H. Brady v Geoffrey Berman* has been *sub judice* for many months. The Oral argument was on November 17, 2020. All I was seeking was the right to file a criminal complaint about the corruption described in this document.

## CONCLUSION

Nothing in the Order to Show Cause proves that Brady is lying in any of his public pronouncements on YouTube or Craigslist. What is on YouTube is protected speech.

In his Reply to this Opposition, Mr. Sussman must show with "specificity" which of the three answers on the Jury interrogatory sheets was a finding that the personal guarantees were enforceable.

In the Reply to this Opposition, Mr. Sussman must show with "specificity" which of the three questions on the Jury interrogatory sheets was a jury rejection of Brady's personal guarantee defense.

In his Reply to this Opposition, Mr. Sussman must show with "specificity" with which of the three questions was a denial of Brady's constructive eviction defense.

In his Reply to this Opposition, Mr. Sussman, must show with "specificity" which of the counterclaims were ever presented to the jury.

The Court should sanction Mr. Sheindlin and Mr. Sussman for seeking to trample on Mr. Brady's protected speech by asking for prior restraint and filing court papers filled with intentional lies.

For all of these reasons, the Court must deny Sheindlin's attempt to silence Brady's First Amendment right.

DATED:  February 19, 2021

             Respectfully submitted,

             ___/s/ JAMES H. BRADY__
             James Brady
             510 Sicomac Avenue
             Wyckoff, NJ 07481.
             bradyny@gmail.com