UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GREGORY SHEINDLIN,                              21 CV 01124 (LJL)

              Plaintiff,                   **PLAINTIFF'S RESPONSE TO ORDER
                                                          TO SHOW CAUSE**

vs.

JAMES BRADY,

              Defendant.
-------------------------------------------------------------x

## STATEMENT OF FACTS

On February 8, 2021, plaintiff filed this lawsuit seeking injunctive and money damages, both compensatory and punitive, against defendant for ongoing defamatory conduct. *See* Complaint, Prayer for Relief.

In his Complaint, plaintiff alleged that on August 13, 2020, defendant had used his internet account to publish on YouTube three videos which falsely claimed that plaintiff had stolen $1.7 million dollars from him on September 5, 2018. *Id.* at para. 44. In subsequent published comments, defendant claimed that plaintiff engaged in "fraud schemes", that plaintiff conducted a "fraudulent scheme" by which he stole $1.7 million from him, that plaintiff had "corrupted" federal and state judges through a "pay to play" scheme and that plaintiff had "bribe[d]" judges. *Id.* at para. 45.

On January 28, 2021, defendant sent a two-page letter to 44 members of the news media in which he claims that plaintiff had engage in "irrefutable criminal activity," again repeating his baseless allegation that plaintiff had stolen $1.7 million from him. *Id.* at paras. 50-51.

1

On March 9, 2021, the Court denied plaintiff's application for a TRO, finding that "[t]here has been no showing on the papers before the Court that he [defendant] is likely to repeat his defamatory statements now that the litigation [*Brady v. Sheindlin*] has been dismissed...the motion to denied without prejudice to renewal should it be shown that Brady has posted additional defamatory statements after the date of dismissal of the related case." *See* Docket entry 17, p. 4.[1]

In fact, since February 25, 2021 and proceeding to the present, defendant has repeated the same types of defamation in a myriad of replies he has written in response to public comments under his August 2020 YouTube postings and in libelous statements otherwise distributed to journalists. In these replies, Brady continues to call plaintiff a thief, a liar and claims with regularity that he has corrupted members of the state and federal judiciary. And, while On February 5, 2021, YouTube viewership of the defamatory statements was approximately 14,000, by April 5, 2021, YouTube viewership of the defamatory statements had increased two-fold, to approximately 33,000. Instead, plaintiff has refused to voluntarily remove his defamatory YouTube posts and gleefully has continued to defame plaintiff at every turn.

Following a conference call held on April 1, 2021 in which the undersigned responded to the court's inquiry by indicating that plaintiff would waive his money damages claim and requested a bench trial to expedite resolution of the injunctive aspect of the matter, this court issued an Order to Show Cause querying whether, in that light,

---

[1] The referenced dismissal of *Brady v. Sheindlin*, 20-cv-7047 (LJL) was entered on February 25, 2021.

2

diversity jurisdiction continues to exist. During this call, the court did not use the words "definitive or irrevocable" to characterize this waiver; nor did plaintiff's counsel. It was plaintiff's understanding, albeit unstated by the undersigned during the conference, that any waiver as to damages was not irrevocable and could be revised depending on what was revealed during discovery (e.g., scope or targets of dissemination) or defendant's conduct, specifically his continued defamatory publications.

Indeed, following this conference, defendant continued to make highly defamatory statements regarding plaintiff and has promised to continue to do so. In light of defendant's continued defamatory behavior, plaintiff wishes to pursue, not withdraw, his claims for compensatory and punitive damages. Absent this possibility, defendant will simply continue to defame plaintiff without the risk of serious financial sanction. [2]

Having indicated his desire to reinstate his damage claims within ten days from the April 1 conference, plaintiff should be permitted to do, mooting the issue raised in and by the Order to Show Cause. [3] No discovery has yet commenced, and no party is prejudiced by this, especially since it is the defendant's ongoing defamatory conduct which causes plaintiff to renew his commitment to seeking money damages.

---

[2] Plaintiff has not had an opportunity to discover the full scope of defendant's defamatory publication including the substance of all statements made and to whom they were published. Plaintiff intends to demand from Brady any and all documents including emails, texts and letters in which Brady discussed the conduct of Gregory Sheindlin.

[3] Plaintiff recognizes that defendant has the right to a jury trial and withdraws any objection thereto. At the same time, plaintiff does intend to move for summary judgment following the limited discovery each party intends to do.

## LEGAL ARGUMENT

### A. THIS COURT HAS DIVERSITY JURISDICTION

Assuming that plaintiff did not alter his position with regard to pursuing compensatory and punitive damages, as he has expressed his clear desire, this Court continues to have jurisdiction in this matter.

When invoking the court's diversity jurisdiction, courts typically evaluate jurisdiction "as of the date of the complaint" and "[o]nce jurisdiction has attached, it cannot be ousted by subsequent events." Carling v. Peters, No. 10-cv-4573, 2013 U.S. Dist. LEXIS 42038, at *10-*11 (S.D.N.Y. 2013) (quoting Scherer v. Equitable Life Assurance Soc'y. of U.S., 347 F.3d 394, 397 (2d Cir. 2003)). Of course, the underlying allegations which predicated diversity jurisdiction must have been made in good faith, and a court may look at subsequent events to determine whether the plaintiff acted in bad faith simply to obtain federal jurisdiction. See Id. at *11-*13.

Here, plaintiff's initial pleading was filed in good faith as defendant had broadly circulated his defamatory claims, namely, that, he, an attorney-at-law in good standing in state and federal courts, is a thief and a liar who has corrupted and manipulated this and other courts to do him favors based on political connections. Prior court decisions have made clear that plaintiff is not a liar, a thief, or a corrupter of any judge and that these claims are categorically false. Plaintiff seeks damages for reputational damages and other injuries, i.e., anxiety, which he has sustained. "Generally, in order to prove defamation under New York law, a plaintiff must provide evidence of special damages, which consist of "the loss of something having economic or pecuniary value." *Celle,* 209 F.3d at

4

179 (quoting *Matherson v. Marchello,* 100 A.D.2d 233, 235, 473 N.Y.S.2d 998 (2d Dep't 1984)). *Proof of special damages is unnecessary where the defamatory statement fits "within an exception in which damages are presumed," namely libel per se or slander per se. Sharratt v. Hickey,* 20 A.D.3d 734, 799 N.Y.S.2d 299, 301 (2005); *see also Fleming v. Hymes-Esposito,* No. 12 Civ. 1154(JPO), 2013 WL 1285431, at *7 (S.D.N.Y. March 29, 2013) (describing the requirement of special damages for slander cases); *Sprewell* 525*525 *v. NYP Holdings, Inc.,* 1 Misc.3d 847, 772 N.Y.S.2d 188, 196 (2003) (requiring special damages for libel cases under New York law). [emphasis supplied]." *Lan Sang v. Ming Hai,* 951 F.Supp. 504, 524-25 (S.D.N.Y. 2013).

Plaintiff seeks general damages for defamation *per se* as the defendant's comment "tend to injure plaintiff in his trade, business or profession." *Nolan v. State of New York,* 2018 NY Slip Op 00269 (1st Dep't 2018), citing *Liberman v. Gelstein,* 80 NY2d 429, 435 (1992). In New York, awards of compensatory and punitive damages in cases of this sort, which encompass damages to professional reputation and emotional distress/ embarrassment, routinely exceed $75,000. *See, Partridge v. State of New York,* 173 A.D.3d 86, 100 N.Y.S.3d 730 (3rd Dep't. 2019)(sustaining an award of $300,000 for emotional distress and embarrassment caused by depiction of claimant's photograph on billboard with 60 individuals arrested for crimes involving the online sexual exploitation of children); *Rossignol v. Silvernail,* 185 A.D.2d 497, 586 N.Y.S.2d 343 (3rd Dep't 1992) (remitting of compensatory and punitive damage awards of $875.000 to $100,000 sustained where defendants accused plaintiff of child abuse to DSS and otherwise); *Morsette v. the Final Call,* 309 A.d.2d 249, 764 N.Y.S.2d 416 (1st Dept 2003)

5

(affirming award of $140,000 for reputational and emotional harm for improper publication of a single photo mis-depicting plaintiff as an inmate).

In addition, when determining the amount in controversy, "the Court should consider the injunctive relief sought." Audi of Smithtown, Inc. v. Volkswagen of Am., Inc., 2009 U.S. Dist. LEXIS (citing Hunt v. Washington State Apple Advertising Comm'n., 432 U.S. 333, 347 (1977). Thus, "[w]here the plaintiff seeks injunctive relief, the value of his claim is generally asserted with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction." A.F.A. Tours, Inc. v Whitchurch, 937 F.2d 82, 87-88 (2d Cir. 1991).

The amount in controversy should be "calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected *or the injury being averted* constitutes the amount in controversy when damages are not requested." Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir. 1972) (emphasis added).

Thus, in Brooks v. Consensus Strategies, L.L.C., No. 07-cv-560, 2007 U.S. Dist. LEXIS 107649 (D. Conn. 2007), where the plaintiff filed suit in state court alleging that defendant engaged in "trade defamation and interfered with Plaintiff's use of his own intellectual property," and where he sought only declaratory and injunctive relief, the district court denied the plaintiff's motion to remand the matter after the defendant removed it to federal court because, while eschewing money damages, the plaintiff alleged that the defendant's conduct, which he sought to enjoin, "has caused him $20,000 loss so far and will cause him a loss greater than $100,000." Id. at *2-*3. Thus, since the

"object of the litigation is to enjoin Defendant from future conduct that will cost Plaintiff more than $100,000 . . . [t]he injury being averted in this case, which constitutes the amount in controversy, exceeds $75,000." Id. at *3.

The complaint here alleges more than $75,000 in reputational or other injury/damages flowing from the nature and frequency of defendant's defamatory statements which he sought to enjoin and their continuity even following this court's denial of the TRO. [4] At the time the complaint was filed, plaintiff sought more than $75,000 in damages in good faith, and even, assuming *arguendo*, plaintiff irrevocably waived his right to money damages, this does not divest the court of jurisdiction it had at the time the complaint was filed in light of the good faith allegation then made for money damages. In addition, defendant's defamation has caused, and will continue to cause, reputational and/or other injury/damages greater than $75,000, which is the value of the injury to be averted by injunctive relief and, thus, exceeds the amount in controversy required by 28 section 1332.

## CONCLUSION

For the reasons set forth, this Honorable court should maintain jurisdiction over this matter.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

---

[4] Upon resolution of this motion, plaintiff intends to file an Amended Complaint enumerating the further defamation to which defendant has subjected him. To this date, defendant has not filed an Answer to the initial Complaint with which he was served.

SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Plaintiff

Dated: April 9, 2021