USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/6/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Gregory Sheindlin,

                Plaintiff,

-against-

James Brady,

                Defendant.

1:21-cv-01124 (LJL) (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

      This is a defamation case brought by Plaintiff Gregory Sheindlin ("Plaintiff" or "Sheindlin"), a New York attorney, against Defendant James Brady ("Defendant" or "Brady"), arising out of statements Brady made about Sheindlin in the aftermath of a New York state court action in which Sheindlin successfully represented one of Brady's adversaries in collecting a $1.7 million judgment against Brady (the "Enforcement Proceeding"). *See Sheindlin v. Brady*, No. 21-CV-01124 (LJL) (SDA), 2021 WL 2075483, at *1 (S.D.N.Y. May 24, 2021).

      The Court has before it (1) a letter from Plaintiff dated May 27, 2021, which the Court is construing as a motion to quash two subpoenas issued against Phillipe Ifrah ("Ifrah"), a client of Plaintiff's and one of Defendant's former adversaries in one of the lawsuits underlying the Enforcement Proceeding ("*IGS Realty I*"[1]), and Robert Fass ("Fass"), who was Ifrah's counsel in that litigation (Pl.'s Ltr. Mot., ECF No. 82); (2) a letter motion to quash filed by real estate developer Frank H. McCourt, Jr. ("McCourt") (FHM Ltr. Mot., ECF No. 85); (3) Defendant's letter oppositions to each of these letter motions to quash (Def.'s I&F Opp., ECF No. 90; Def.'s FHM

---

[1] *IGS Realty v. Brady*, Index No. 603561/2009 (N.Y. Sup. Ct. filed Dec. 2, 2009).

Opp., ECF No. 96); (4) Plaintiff's letter reply in further support of his motion to quash (Pl.'s Reply, ECF No. 89); (5) McCourt's letter reply in further support of his motion to quash, and Plaintiff's letter responding to Defendant's opposition to McCourt's motion to quash (FHM Reply, ECF No. 93; Pl.'s FHM Ltr., ECF No. 91); and (6) a letter surreply filed by Defendant in further opposition to McCourt's motion to quash. (Def.'s Surreply, ECF No. 97.)[2]

After careful review of the record, for the reasons discussed below, the Court hereby GRANTS both letter motions (ECF Nos. 81 & 85), and the subpoenas issued against Ifrah, Fass and McCourt are QUASHED.

## LEGAL STANDARDS

For discussion of the applicable legal standards, the Court refers the parties to its prior Opinion and Order quashing other subpoenas issued on Defendant's behalf. *See Sheindlin*, 2021 WL 2075483, at *2.

## DISCUSSION

**I.      The Subpoenas To Ifrah And Fass Are Quashed**

In an exercise of its discretion, the Court hereby quashes the subpoenas issued against Ifrah and Fass since they seek testimony that is not relevant to any party's claim or defense.[3]

---

[2] Defendant has effected the issuance of approximately 20 subpoenas in this case, targeting seven New York State judges, three federal judges, three elected officials, two of Defendant's former attorneys, a *New York Post* reporter, McCourt and a second real estate developer, Ifrah and Fass. *See id*. By Order, dated May 24, 2021, the Court quashed the fourteen subpoenas issued against the judges, elected officials and reporter, and stated that it would resolve disputes regarding the remaining subpoenas if and when they were brought before the Court. *See id*. at *5. This Opinion and Order relates to three such subpoenas.

[3] Defendant argues that Plaintiff lacks standing to challenge the subpoenas issued against Ifrah and Fass. (*See* Def.'s I&F Opp. at 2.) It is true that a party ordinarily lacks standing to challenge a subpoena served upon a non-party. Here, however, it is the Court that has construed Plaintiff's letter as a motion to quash, and the Court has authority under Rule 26 to quash subpoenas *sua sponte* if they seek testimony that is

Defendant articulates the basis for his subpoenas to Ifrah and Fass as follows:

> The deposition of Mr. Ifrah and his attorney Mr. Fass are needed precisely because their testimony proves Defendant Brady's claim is true that at the same exact time Phillipe Ifrah hired Robert Fass to litigate that Question Number One on a June 26, 2015 jury interrogatory sheet [in *IGS Realty I*] was a finding that the Corporate Tenants were being used as illegal banquet halls and not meeting halls Phillipe Ifrah hired Gregory Sheindlin to steal over $1.7 million dollars from Brady on September 5,2 018 by fraudulently representing "through implication" that this same Question Number One on the June 26, 2015 Jury interrogatory sheet, was a jury finding that the personal guarantees were enforceable.
>
> Defendant is also being sued for defamation of character by Sheindlin for saying on line that Sheindlin was also hired by Ifrah to fraudulently say that the Jury's answers to Questions Number Two and Three on the Jury interrogatory sheet were the Jury's rejection of Brady's affirmative defenses and counterclaims.

(Def.'s I&F Opp. at 1-2 (grammatical and typographical errors in original).) While Defendant's prose is not a model of clarity, his position appears to boil down to the following: the testimony of these two witnesses could prove that Plaintiff fraudulently represented the substance and/or legal significance of questions 1-3 on a jury interrogatory sheet from the *IGS Reality I* litigation.

The *IGS Realty I* jury resolved the factual questions before it and rendered its verdict by responding to Jury Interrogatories. The substance and legal significance of a jury verdict is a matter of legal interpretation. There is no personal knowledge that Ifrah or Fass possibly could possess that would be relevant to this Court's interpretation of the *IGS Realty I* jury's verdict. Thus, these subpoenas are QUASHED.[4]

---

not relevant to any party's claim or defense. *See* Fed. R. Civ. P. 26(b)(2)(C) (authorizing the Court *sua sponte* to limit discovery that "is outside the scope permitted by Rule 26(b)(1)").

[4] As set forth in the Conclusion of this Opinion and Order, if Plaintiff seeks to use testimony of Ifrah and/or Fass in this case at or prior to trial, Defendant may move for leave to take their depositions with respect to the testimony offered or to be offered. (*See* Conclusion, *infra*.)

**II.  The Subpoena To McCourt Is Quashed**

In an exercise of its discretion, the Court hereby quashes the subpoena issued against McCourt since it seeks testimony that is not relevant to any party's claim or defense.

Defendant articulates two bases for his subpoena to McCourt. The first is as follows:

> The first precise reason testimony of Frank McCourt is relevant to the present case is because Mr. Sheindlin and his attorney Mr. Sussman have made clear during discovery on May 4,2021 that they plan on discussing the air rights litigations at trial. Since the topic of the air rights litigations are being used by Sheindlin and his attorney against Brady that means Brady must be given the right in his defense to prove that the defamatory statements made by certain judges against Brady in the air rights litigations were false and made at the request of the attorneys for billionaire developer Frank McCourt and developer Jeffery Katz of Sherwood Equities

(Def.'s FHM Opp. at 1-2 (grammatical and typographical errors in original).) The Court rejects this purported basis.

First, as a general matter, the "air rights litigation"[5] is not directly relevant to Plaintiff's claims in this case, which arise from Defendant's statements about Plaintiff's purported theft of certain funds in connection the separate *IGS Realty I* litigation. While McCourt's personal knowledge would be relevant to the substance of the air rights litigation, there is no suggestion that Plaintiff intends to put any such substance at issue in this case.[6]

Rather, Plaintiff has stated that "the air rights litigation is not relevant to [this] case except to show the malicious pattern of conduct by [D]efendant." (Pl.'s FHM Ltr. at 1.) The "pattern" of Defendant's litigation conduct may be ascertained from public information: the number of

---

[5] *Brady v. 450 W. 31st St. Owners Corp.*, Index No. 157779/2013 (N.Y. Sup. Ct. filed Nov. 23, 2013).

[6] As set forth in the Conclusion of this Opinion and Order, if Plaintiff seeks to use testimony of McCourt in this case at or prior to trial, Defendant may move for leave to take McCourt's deposition with respect to the testimony offered or to be offered. (*See* Conclusion, *infra*.)

lawsuits Defendant has filed, the persons against whom he brought those lawsuits, the public record of his participation in those lawsuits and the outcome of those lawsuits. No personal knowledge from McCourt is needed to illuminate this public information.

Indeed, Defendant has not plausibly identified any unique personal knowledge possessed by McCourt that is relevant to Defendant's pattern of litigation conduct. Among other things, McCourt was Defendant's litigation *adversary*, and Defendant offers no plausible basis to infer that McCourt would provide testimony that would be helpful to him. Moreover, even assuming *arguendo* that McCourt did possess personal knowledge somehow relevant to Defendant's "malicious pattern" of litigation conduct, the Court finds that, in light of the substantial public record of Defendant's litigation history, discovery of McCourt's knowledge via subpoena would not be proportional to the needs of the case, considering, in particular, "the importance of the [proposed] discovery in resolving the issues [at stake in the action], and whether the burden . . . of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[7]

Defendant does assert—incredibly—that McCourt would testify that various judges who have ruled against Defendant essentially were bought off by McCourt and another real estate developer. (*See* Def.'s FHM Opp. at 1-2, 5-6; *see also id.* at 3.) This utterly unsubstantiated attack on the integrity of multiple state and federal jurists is out of bounds, even for a *pro se* litigant. Defendant is admonished that, should he continue to make baseless allegations against officers of the court, sanctions may be imposed against him. *See Malley v. New York City Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) ("The fact that a litigant appears *pro se* does not shield him

---

[7] Further, the Court declines to endorse any principle under which a plaintiff's allegation that a defendant has engaged in a pattern of vexatious litigation would subject any litigant unfortunate enough to have been embroiled in any of those prior litigations to being dragged into the new litigation via subpoena.

5

from Rule 11 sanctions because 'one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'"). In the meantime, facially absurd allegations of judicial bribery, lacking any shred of substantiation to push them out of the realm of fantasy, cannot serve as the basis for subjecting an otherwise irrelevant nonparty to the burden of a subpoena.

As a second asserted basis for his subpoena to McCourt, Defendant argues that McCourt's testimony is relevant to Defendant's counterclaims.[8] On June 1, 2021—the last day of discovery—Defendant filed an Answer to Plaintiff's Complaint, with Counterclaims.[9] (*See* Ans. & Counterclaims, ECF No. 92.) His counterclaims arise from an article published in the *New York Post* on April 3, 2021. (*See*, *e.g.*, *id*. ¶ 34.) Defendant alleges (1) that the article contains several statements defamatory of him; and (2) that Plaintiff (and his counsel) "collu[ded]" and "acted [i]n concert" with the "supposed[]" author of the article, Kathianne Boniello, in a "coordinated scheme" to defame Defendant. (*Id*. ¶¶ 34, 48, 60, 70.) Defendant purports to explain the relevance of McCourt's testimony to his counterclaims, as follows:

> [T]he deposition testimony of Frank McCourt will prove that the comments made by New York Post reporter Boniello, Gregory Sheindlin , and his attorney Robert Sussman in the April 3,2021 News Story were defamatory per se
>
> The April 3, 2021 New York Post article makes the following five false defamatory claims about Brady that Frank Mccourt and his attorneys at Greenberg Traurig know from their personal knowledge are totally false and defamatory.
>
> 1) The article says "Brady is a gadfly who clogs courts with 'vexatious' claims".

---

[8] Defendant's letter opposition purports to assert both a "[s]econd" and a "[t]hird" basis for the subpoena to Frank McCourt, but these appear to be entirely redundant of one another. (*See* Def.'s FHM Opp. at 2.)

[9] Defendant filed his belated Answer only after the Court ordered him to do so. (*See* 5/25/21 Order, ECF No. 78.)

6

> 2) The article says "James H. Brady, has filed so many repetitive lawsuits he's been ordered to stop and sanctioned in both state and federal courts."
>
> 3) The article says "Court records show he's accused a "dizzying array of defendants" — judges, the Manhattan District Attorney, federal prosecutors, and lawyers who have either repped him or beaten him in court — of corruption and fraud".
>
> 4) The article says "Despite Brady's full and fair opportunity to litigate his legal rights at every level of the New York State judicial system, he would commence a litany of vexatious and harassing legal actions where he impugned the motivations and integrity of anyone involved with the adverse state court decisions," Sheindlin said in his lawsuit.
>
> 5) The article says "Mr. Brady lost and continues to act as if our system of justice applies to everyone but him," said Sheindlin's lawyer, Michael Sussman.

(Def.'s FHM Opp. at 1-2 (grammatical and typographical errors in original).) The Court rejects this purported basis as well.

At the outset, the Court notes that Plaintiff's deadline to answer or otherwise respond to Defendant's counterclaims has not yet passed, and therefore the timeliness and legal sufficiency of such counterclaims is not yet determined. Nevertheless, even assuming discovery were permitted to go forward with respect to Defendant's counterclaims, the Court finds Defendant is not entitled to subpoena McCourt based on them.

Defendant asserts that McCourt's testimony could demonstrate the falsity of five numbered claims contained in an April 3, 2021 *New York Post* article. Yet those five claims are a combination of opinion—*e.g.*, that Defendant is a "gadfly"—and statements of objective, verifiable fact—*e.g.*, that Defendant has "been ordered to stop [filing lawsuits] and sanctioned in both state and federal courts"; that he has accused "judges, the Manhattan District Attorney, federal prosecutors, and lawyers who have either repped him or beaten him in court [] of corruption and fraud"; that "[Plaintiff] said" certain things "in his lawsuit" (*i.e.*, in his Complaint);

7

or that Plaintiff's counsel "said" certain other things in other court filings. In no case would any personal knowledge McCourt plausibly possessed shed light on whether these statements were true or false.[10] In the alternative, given the substantial public record of Defendant's litigation history, the Court again finds that, to the extent McCourt somehow were to possess any knowledge relevant to these issues, discovery of this knowledge via subpoena would not be proportional to the needs of the case.

Accordingly, because neither basis asserted by Defendant for the subpoena against McCourt withstands scrutiny, that subpoena is QUASHED.

**CONCLUSION**

By reason of the foregoing, it is hereby ORDERED that the letter motions to quash the subpoenas issued against Ifrah and Fass (ECF No. 81) and McCourt (ECF No. 85) are GRANTED, and those three subpoenas are QUASHED. Nevertheless, if Plaintiff seeks to introduce testimony from Ifrah, Fass and/or McCourt at or before trial, Defendant may move for leave to take their depositions with respect to the testimony offered or to be offered.

**SO ORDERED.**

Dated:    New York, New York
          June 6, 2021

_____
STEWART D. AARON
United States Magistrate Judge

---

[10] The Court again declines to credit Defendant's absurd and entirely unsubstantiated claim that "the real reason" these orders issued was not the reasons stated in the orders, but "because [] two billionaires and their politically connected attorneys" had the judges in their pocket. (*See* Def.'s FHM Opp. at 3.)