UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                :

GREGORY SHEINDLIN,         :
                :
         Plaintiff,    :        21-cv-1124 (LJL)
                :
    -v-             :        <u>OPINION</u>
                :

JAMES BRADY,          :
                :
         Defendant.  :
                :

-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  04/07/2022

LEWIS J. LIMAN, United States District Judge:

Plaintiff Gregory Sheindlin ("Sheindlin" or "Plaintiff") brings three causes of action for defamation against James Brady ("Brady" or "Defendant").  Dkt. No. 1.  The parties filed competing motions for summary judgment on Sheindlin's claims.  *See* Dkt. Nos. 123, 128.  On March 31, 2022, the Court issued an Order in which Brady's motion for summary judgment was granted in part and denied in part, Sheindlin's motion for summary judgment was denied, and a telephonic case management conference was scheduled.  Dkt. No. 155.  The Court stated that its reasons would be set forth in an Opinion to follow.  *Id.*  This Opinion sets forth the reasons for the Court's decision.

## BACKGROUND

The following facts are undisputed for purposes of summary judgment except as otherwise indicated.

This lawsuit relates to a state court lawsuit brought by IGS Realty Co., L.P. ("IGS Realty") against Brady as the guarantor of unpaid rent for commercial spaces leased by companies owned by Brady.  *See IGS Realty Co., L.P. v. Brady*, Index No. 603561/2009 (N.Y. Sup. Ct.).  On June 26, 2015, a jury rendered a verdict in favor of IGS Realty and against Brady.

Dkt. No. 131-14 ¶ 14.  The jury unanimously found for IGS on its claim of breach of contract and against Brady on his claims that IGS had breached the implied warranty that the premises were fit for the uses stated in the lease and that IGS Realty fraudulently induced him to sign the leases and guarantees.

After Brady appealed, the New York state courts affirmed the jury verdict.  On April 13, 2017, the Appellate Division, First Department, affirmed the Supreme Court's denial of Brady's motion to set aside the jury verdict.  *Id.* ¶ 18; *see IGS Realty Co., L.P. v. Brady*, 52 N.Y.S.3d 320 (1st Dep't 2017).  On June 7, 2018, the Appellate Division, First Department, denied Brady's motion that attacked the verdict.  Dkt. No. 131-14 ¶ 19; *see IGS Realty Co., L.P. v. Brady*, 74 N.Y.S.3d 747 (1st Dep't 2018).  On October 23, 2018, the New York State Court of Appeals rejected Brady's motion for re-argument and denied his application for leave to appeal.  Dkt. No. 131-14 ¶ 20; *see IGS Realty Co., L.P. v. Brady*, 113 N.E.3d 464 (N.Y. 2018).

Meanwhile, on July 29, 2016, IGS Realty retained Sheindlin to represent it at a hearing to settle the judgment and determine attorneys' fees due from Brady.  Dkt. No. 131-14 ¶¶ 2, 16.  On May 31, 2017, IGS Realty, represented by Sheindlin, filed judgment against Brady in the amount of $1,458,002.33.  *Id.* ¶ 17.  On October 27, 2017, IGS Realty filed a petition to enforce the judgment.  *Id.* ¶ 21.  On May 23, 2018, the state court issued an order directing Brady to turn over the shares and proprietary leases in his commercial cooperative units and directing that a public action be conducted and that the sale proceeds be distributed to satisfy any judgment debtor or lien holder.  *Id.* ¶ 23.  On September 5, 2018, prior to the public auction, Brady sold his commercial cooperative apartment for approximately $9.5 million.  *Id.* ¶ 24.  Each of the judgment debtors were paid from the process of this sale at the closing.  *Id.* ¶ 25.  Pursuant to a

court order, IGS Realty collected $1,705,535.71 to satisfy the judgment. *Id.* ¶¶ 3, 26. On

September 19, 2018, a satisfaction of judgment was filed in the state-court action. *Id.* ¶ 28.

Meanwhile, Brady initiated a series of pro se actions stemming from the adverse state-

court decision in the IGS Realty matter.[1] On September 17, 2018, Brady sued Geoffrey Berman

("Berman"), United States Attorney for the Southern District of New York, bringing claims

pursuant to the Due Process Clause, the Equal Protection Clause, two criminal statutes, and the

Freedom of Information Act. *See Brady v. Berman*, 2019 WL 4534421, at *1 (S.D.N.Y. Sept.

18, 2019); *see also Brady v. Berman*, 18-cv-8459 (S.D.N.Y.), ECF No. 1. In part, Brady sought

an injunction compelling Berman to protect him from the consequences of the IGS Realty

litigation, which Brady characterized as "crimes." *Brady v. Berman*, 2019 WL 4534421, at *1.

The court dismissed the claims in part because Brady lacked standing to challenge a prosecutor's

failure to investigate or to prosecute other individuals. *Id.* at *2.

On July 30, 2019, Brady sued Barry R. Ostrager, a Justice of the New York Supreme

Court, alleging that Justice Ostrager violated Brady's constitutional rights as the presiding judge

in the IGS Realty matter. *See Brady v. Ostrager*, 19-cv-7122 (S.D.N.Y.), ECF No. 2; *see also

id.*, ECF No. 6. Brady alleged "that the judge refused to adjudicate certain issues, had no

jurisdiction to preside over [Brady's] 2015 trial, colluded with the landlord's attorney during

trial, fabricated a jury charge, had no jurisdiction to hear [Brady's] case and colluded with higher

court judges." *Brady v. Ostrager*, 19-cv-7122 (S.D.N.Y.), ECF No. 6, at 2. He also alleged that

Justice Ostrager retaliated against him for maintaining a website "which provides a documentary

---

[1] The Court considers publicly available dockets and filings in prior legal proceedings because
"courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of
the matters asserted in the other litigation, but rather to establish the fact of such litigation and
related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

history of corruption in the New York Court System" and for making numerous YouTube videos "in which he discusses the collusion between judges and politicians, and the consequences for the judiciary." *Id.* On August 20, 2019, the complaint was dismissed as barred by judicial immunity and the *Rooker-Feldman* doctrine.[2] *Id.* at 6; *see also Brady v. Ostrager*, 834 F. App'x 616, 617 (2d Cir. 2020) (summary order) (affirming district court's dismissal of the complaint).

On October 31, 2019, Brady sued IGS Realty and another individual, bringing claims, *inter alia*, of fraud, breach of contract, negligence, and a conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985 based on the IGS Realty matter in state court. *See Brady v. IGS Realty Co. L.P.*, 19-cv-10142 (S.D.N.Y.), ECF No. 1; *Brady v. IGS Realty Co. L.P.*, 2020 WL 5414683, at *1 (S.D.N.Y. Sept. 8, 2020).

On August 13, 2020, Brady posted three videos on YouTube that were titled "Video #1: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018"; "Video #2: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018"; and "Video #3: Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018." Dkt. No. 131-14 ¶¶ 6, 55; *see also* Dkt. No. 130 ("Sheindlin Decl."), Exs. 1–3. The videos were posted with public visibility. Dkt. No. 131-14 ¶¶ 54–55. Viewers posted negative comments about Sheindlin in response to the video, and Brady replied to many of these comments on an ongoing basis. *Id.* ¶ 56. For example, he posted the following replies to comments posted under the videos:

> Justice requires Gregory Sheindlin to serve a long prison sentence and lose his law license so he can never inflict fraud schemes again.

---

[2] "The *Rooker-Feldman* doctrine 'established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" *Brady v. Sheindlin*, 2021 WL 737458, at *2 (S.D.N.Y. Feb. 25, 2021) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)).

> It's sickening that Gregory Sheindlin is such a psychopath that thought he could get away with this cruel scheme. 10 years minimum in prison is the medicine he needs.
>
> Gregory Sheindlin is a totally corrupt piece of [expletive] who stole over 1.7 million dollars from me through a fraud scheme. He will get his.
>
> The worst is that it has been Federal Judges as well as State Judges that Gregory Sheindlin has corrupted. It's all pay to play. I have this lowlife on my hook and he is going to be fried. 10 or 12 years in prison will protect the public.
>
> Now Shady Sheindlin is going to learn 'don't do the crime if you can't do the time[.]'

*Id.* ¶ 57.

On August 30, 2020, Brady sued Sheindlin and Sheindlin's law firm for damages he allegedly suffered when the state court judgment in the IGS Realty matter was obtained and enforced. *See Brady v. Sheindlin*, 20-cv-7047 (S.D.N.Y.), ECF No. 1; *Brady v. Sheindlin*, 2021 WL 737458, at *1 (S.D.N.Y. Feb. 25, 2021). The case was assigned to this Court. "The essence of [Brady's] claim . . . is that there were a variety of improprieties in the State Court Action of which [Sheindlin and Sheindlin's law firm] were aware and as a result, the Judgment should not have been entered against him." *Brady v. Sheindlin*, 2021 WL 737458, at *1.

On September 8, 2020, Judge Engelmayer dismissed all of Brady's claims in *Brady v. IGS Realty Co. L.P.*, 2020 WL 5414683, at *1 (S.D.N.Y. Sept. 8, 2020). In recounting the IGS Realty state-court case, the court stated that "the jury found for IGS Realty on each claim" and "found that Brady had breached his contract to IGS Realty by not paying the rent amounts owed under his guarantees (the 'Personal Guarantees'), and that IGS Realty had not 'breached the implied warranty that the premises were fit for use in the lease' or 'fraudulently induced [Brady] to sign the leases and guarantees.'" *Id.* The court also stated that the jury "rejected Brady's defense to breach that IGS Realty had constructively evicted him through its own breaches of the lease terms." *Id.* In dismissing Brady's claims that challenged the validity of the Personal

Guarantees underlying the judgment against Brady in the state-court IGS Realty matter, the court held that the claims were barred by the *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. *Id.* at *4.

On October 13, 2020, about a month after dismissing Brady's claims in *Brady v. IGS Realty*, Judge Engelmayer entered a filing injunction against Brady. *See Brady v. IGS Realty Co. L.P.*, 2020 WL 6049649, at *5 (S.D.N.Y. Oct. 13, 2020). In determining whether to impose a filing injunction, the court considered five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at *3 (quoting *Safir v. U.S. Lines*, 792 F.2d 19, 24 (2d Cir. 1986)). The court found that the *Safir* factors "overwhelmingly favor the imposition of a filing injunction." *Id.* The court found that "[t]he first factor weighs heavily so." *Id.* As to the first factor, the court highlighted how Brady was already subject to a filing injunction in the District for similar conduct and how the opinion dismissing *Brady v. Ostrager* warned Brady "that further vexatious or frivolous litigation in this Court will result in an order barring [Brady] from filing any new action in this Court without prior permission." *Id.* (alteration in original) (quoting *Brady v. Ostrager*, 19-cv-7122 (S.D.N.Y.), ECF No. 6 at 5). The court also noted how Brady had filed another action concerning the IGS Lease Agreements (i.e., *Brady v. Sheindlin*) after the magistrate judge recommended the imposition of a filing injunction and how Brady "has continued to file vexatious, harassing litigation against the parties to these actions" thereby "confirm[ing] a disturbing trend in which Brady drags parties into court whose only apparent wrong had been to represent his adversaries in litigation." *Id.* The court also found that Brady had been sanctioned

in New York State court for "dragg[ing] more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance." *Id.* at *4 (alteration in original). In short, the court found that "[t]he instant actions, and those Brady has continued to file in this District, therefore represent the latest chapters in a long line of vexatious, harassing, and duplicative lawsuits." *Id.* As to the second factor, the court did not find that Brady had an objective good faith expectation of prevailing given his "scores of meritless actions in state and federal court." *Id.* The third, fourth, and fifth factors also did not disfavor a filing injunction. *Id.* Accordingly, Judge Engelmayer imposed a filing injunction, which stated:

> James H. Brady is hereby enjoined from filing any new action in the Southern District of New York that relates in any way to the IGS Lease Agreements, the Personal Guarantees associated therewith, or Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to the IGS Lease Agreements, or any collateral actions arising from those agreements. This injunction does not bar Brady from appealing any decision in this case. However, it should be broadly construed to bar the filing, without leave of this Court, of *any* case against *any* defendant that has as a factual predicate the validity or invalidity of the IGS Lease Agreements, Personal Guarantees, other agreements with IGS Realty, or any legal actions that have arisen from those transactions.

*Id*. at *5.

On or about December 16, 2020, Brady emailed Sheindlin, stating: "One of my three videos of you on youtube stealing over $1.7 million dollars from me September 5, 2018 is getting tons of hits." Dkt. No. 131-14 ¶ 53; Sheindlin Decl., Ex. 5. The next day, on December 17, 2020, Sheindlin emailed Brady, stating in part: "The posting of your statements in conjunction with the videos on YouTube constitute, *per se*, libel and defamation. *It is demanded that you immediately remove them*. As described in recent legal opinions, it has become your habit to unjustifiably impugn the motivations and integrity of others with who [sic] you disagree." Dkt. No. 131-14 ¶ 58; Sheindlin Decl., Ex. 6. That same day, Brady emailed Sheindlin, "You did exactly what I claim you did to me in the youtube videos and in my

complaint against you.  It's sick what you did to me and the public has a right to know."  Dkt.

No. 131-14 ¶ 59; Sheindlin Decl., Ex. 6.

On or about January 13, 2021, Brady posted an advertisement on the internet website

Craigslist to seek an attorney to represent him in *Brady v. Sheindlin*, 20-cv-7047 (S.D.N.Y.).

Dkt. No. 131-14 ¶ 9; Sheindlin Decl., Ex. 4.  The advertisement stated:

> I am looking for a litigator to take over the case of James H Brady v Gregory
> Sheindlin 20-cv-07047 that is currently in the District Court in the Southern District
> of New York.  Sheindlin is the son of Judge Judy Sheindlin.  The case proves that
> Sheindlin used false instruments to collect over 1.7 million
> dollars on a personal guaranty for his client on September 5, 2018.  The case has
> not broken in the news yet since it is being suppressed for this politically connected
> man but it will break very soon because the case is too scandalous to be ignored
> and over 7000 people have already learned about the case on youtube[.]

> There is currently a motion to dismiss that is expected to be denied.  There is also
> currently a request to the Court that it Order that I can file a criminal complaint
> against the politically connected son of Judge Judy Sheindlin since it was already
> proven that he committed a criminal act to steal the 1.7 million dollars.

> The case can be seen on PacerMonitor.  Also there are three under cover videos of
> Sheindlin from September 5, 2018 as he was stealing the money that can be seen
> on YouTube if you type in the name Gregory Sheindlin.

> It is possible that there could be a quick settlement since Sheindlin knows he is
> facing likely jail time unless I decide not to have him criminally prosecuted.

> Interested lawyers should sent [sic] information on your qualifications to
> Bradyny@gmail.com[.]

> Note Sheindlin is representing himself.  I started the case myself but know its [sic]
> best to pass off soon to a lawyer that can take the case to a quick summary resolution
> and conduct possible settlement talks.

Sheindlin Decl., Ex. 4.

On January 27, 2021, Sheindlin again emailed Brady, demanding that Brady remove his

statements from the internet.  Dkt. No. 131-14 ¶ 60; Sheindlin Decl., Ex. 7.

On January 28, 2021, Brady sent an email to forty-four people who work in the news

industry with the subject line: "VERY SAD – Third time will be the charm against Judge Judy's

lowlife son Gregory :(." Dkt. No. 131-14 ¶¶ 10, 61; Sheindlin Decl., Ex. 8.  In the body of the

email, Brady wrote: "LOCK HIM UP !!!  The third time will be the charm." Dkt. No. 131-14

¶ 62; Sheindlin Decl., Ex. 8.  The email also attached a two-page letter dated January 28, 2021

that Brady authored and filed with this Court in *Brady v. Sheindlin*.  Dkt. No. 131-14 ¶ 63;

Sheindlin Decl., Ex. 8; *see also Brady v. Sheindlin*, 20-cv-7047 (S.D.N.Y.), ECF No. 22.  The

letter stated in part:

> [I]t has been proven, and is irrefutable, that Gregory Sheindlin stole my life savings
> of over $1.7 million dollars [sic] on September 5, 2018 solely by fraudulently
> representing that Question Number One on a June 26, 2015 Jury interrogatory sheet
> was a Jury finding that the personal guarantees were enforceable, and was a jury
> finding that my personal guarantee defenses were denied by the Jury when he knew
> Question Number One on the June 26, 2015 Jury interrogatories had absolutely
> *nothing* to do with these issues . . . .

> The above claim of irrefutable criminal activity by Gregory Sheindlin is very
> simple to FACT CHECK simply by looking at Doc. 6-3 of Plaintiff's Amended
> Complaint of September 30, 2020. . . .

> For a third time, I am pleading that without fear or favor this politically connected
> man be promptly held accountable for his irrefutable destructive criminal acts.

Dkt. No. 131-14 ¶ 63; Sheindlin Decl., Ex. 8.

On February 3, 2021, Brady emailed Sheindlin, stating in part: "As of this morning your

three videos from September 5, 2018 now have a combined total of over 13,000 views.  And that

is just the tip of the iceberg!!!!" Dkt. No. 131-14 ¶ 64; Sheindlin Decl., Ex. 9.

On February 25, 2021, this Court dismissed Brady's complaint in *Brady v. Sheindlin*

under the *Rooker-Feldman* doctrine.  *See Brady v. Sheindlin*, 2021 WL 737458, at *4 (S.D.N.Y.

Feb. 25, 2021), *aff'd*, 2021 WL 5312995 (2d Cir. Nov. 16, 2021).

As of July 31, 2021, the three YouTube videos posted by Brady had garnered over 35,000

views.  Dkt. No. 131-14 ¶¶ 8, 69.

## PROCEDURAL HISTORY

On February 8, 2021, Sheindlin filed a complaint against Brady, bringing three causes of action for defamation.  Dkt. No. 1.  The first cause of action concerns Brady's statements about Sheindlin on YouTube, the second cause of action concerns Brady's email to forty-four members of the news media, and the third cause of action concerns Brady's advertisement on Craigslist. *Id.* ¶¶ 60–88.  Sheindlin also moved for a temporary restraining order.  Dkt. Nos. 4–5.  Treating the application as one for a preliminary injunction, the Court denied Sheindlin's motion for preliminary injunctive relief on March 9, 2021.  Dkt. No. 17.

On June 1, 2021, Brady answered and brought counterclaims for defamation, false light invasion of privacy, intentional infliction of emotional distress, and tort.  Dkt. No. 92.  On June 18, 2021, Sheindlin moved to dismiss Brady's counterclaims and moved for sanctions.  Dkt. No. 111.  Brady filed an opposition to the motion to dismiss.  Dkt. No. 114.

On July 16, 2021, Brady moved for summary judgment on Sheindlin's claims as well as on his counterclaims.  Dkt. No. 123.  On August 2, 2021, Sheindlin moved for summary judgment on his claims for defamation and opposed Brady's motion for summary judgment. Dkt. No. 128.  Brady filed a memorandum of law in opposition to Sheindlin's motion for summary judgment and in reply to Sheindlin's opposition to Brady's motion for summary judgment.  Dkt. No. 132.

On March 31, 2022, the Court granted Sheindlin's motion to dismiss Brady's counterclaims.[3]  Dkt. No. 153.  That same day, the Court granted in part and denied in part Brady's motion for summary judgment and denied Sheindlin's motion for summary judgment with Opinion to follow.  Dkt. No. 155.

---

[3] Because the Court dismissed Brady's counterclaims, Brady's motion for summary judgment as to his counterclaims is denied as moot.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Nor may the non-moving party "rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must also demonstrate more than "some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on

conclusory statements, or on mere assertions that affidavits supporting the motion are not

credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation

omitted).

The Southern District's Local Civil Rule 56.1 sets forth specific requirements about how

the facts relied upon by the moving party and disputed by the opposing party are to be presented.

Any party moving for summary judgment must "annex[] to the notice of motion a separate, short

and concise statement, in numbered paragraphs, of the material facts as to which the moving

party contends there is no genuine issue to be tried." L.R. 56.1(a).  Local Rule 56.1(b), in turn,

requires the party opposing the motion to "include a correspondingly numbered paragraph

responding to each numbered paragraph in the statement of the moving party, and if necessary,

additional paragraphs containing a separate, short and concise statement of additional material

facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b).  All

statements in a Local Rule 56.1 submission "must be followed by citation to evidence which

would be admissible." L.R. 56.1(d).  "Each numbered paragraph in the statement of material

facts set forth in the statement required to be served by the moving party will be deemed to be

admitted for purposes of the motion unless specifically controverted by a correspondingly

numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c).

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but

'the *pro se* litigant should be given special latitude in responding to a summary judgment

motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v.*

*N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)); *see Harris v. Miller*, 818 F.3d

49, 57 (2d Cir. 2016) ("'[I]t is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants,' 'particularly where motions for summary judgment are concerned.'" (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), and then *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014))). "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). "This special solicitude is not unlimited, however, and does not 'relieve' a [party] of his or her 'duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 65 (S.D.N.Y. 2016) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).[4]

## DISCUSSION

Plaintiff brings causes of action for defamation regarding: (1) Defendant's statements on YouTube; (2) Defendant's email to forty-four members of the news media; and (3) Defendant's advertisement on Craigslist. The Court first sets forth the general legal standards of defamation under New York law before turning to each of Plaintiff's causes of action.[5]

---

[4] On September 1, 2021, Sheindlin filed a letter motion to strike Brady's motion for summary judgment because Brady failed to submit a Rule 56.1 statement with his motion in accordance with Local Rules and because Brady's belated submission of a statement of facts has no numbered paragraphs. Dkt. No. 138. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). A district court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Local Rule 56.1] statement." *Id.* (quoting *Monahan v. N.Y.C. Dep't Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)). Given this discretion and Brady's pro se status, *see Harris*, 818 F.3d at 57, the Court will overlook his failure to comply with the Local Rules and will conduct a review of the underlying record on the motion for summary judgment.

[5] On March 17, 2022, Defendant moved for this Court's recusal pursuant to 28 U.S.C. § 455. Dkt. No. 149. The Court previously denied Defendant's motions to disqualify and for recusal on April 2, 2021. Since then, Defendant asserts that the Court has "engaged in unconscionable

## I.      Defamation Legal Standards

"The gravamen of an action alleging defamation is an injury to reputation." *Celle v.
Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000). "Under New York law a
defamation plaintiff must establish five elements: (1) a written defamatory statement of and
concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory
statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940
F.3d 804, 809 (2d Cir. 2019); *see also Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F.
Supp. 3d 290, 307 (S.D.N.Y. 2017) ("There are seven elements of defamation under New York
law: (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and
concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker;
(6) either causing harm or constituting slander *per se*; and (7) not protected by privilege." (citing
*Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001))).

### A.      Defamatory Statement

"The New York Court of Appeals has defined a defamatory statement as one that exposes
an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion,
ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-
thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'"
*Celle*, 209 F.3d at 177 (alteration in original) (quoting *Kimmerle v. New York Evening
Journal*, 186 N.E. 217, 218 (N.Y. 1933)).

---

behavior" including by "colluding" with the Court of Appeals for the Second Circuit, which
affirmed this Court's opinion in *Brady v. Sheindlin*.  Dkt. No. 149 at 3; *see also Brady v.
Sheindlin*, 2021 WL 5312995, at *1 (2d Cir. Nov. 16, 2021) (summary order).  Defendant's
allegations are completely unfounded.  Accordingly, there are no grounds for the Court's recusal
under the disqualification statute, and Defendant's instant motion for recusal is denied.

"Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Id.* (alteration in original) (quoting *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985)); *see also Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 518 (S.D.N.Y. 2013) ("It is ultimately 'the responsibility of the jury to determine whether the plaintiff has actually been defamed; however, a threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible of the defamatory meaning imputed to it.'" (quoting *Levin v. McPhee*, 119 F. 3d 189, 195 (2d Cir. 1997))). "Where an allegedly defamatory statement can be reasonably construed as having more than one meaning, only some of which carry a defamatory connotation, whether the statement is defamatory is a question of fact for the jury." *Lan Sang*, 951 F. Supp. 2d at 518; *see also Celle*, 209 F.3d at 178.

"The New York Court of Appeals has developed standards that federal courts follow in determining whether a statement or publication is defamatory." *Celle*, 209 F.3d at 177. "First, the Court of Appeals has repeatedly instructed that courts 'must give the disputed language a fair reading in the context of the *publication as a whole*.'" *Id.* (quoting *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. 1995)). "Second, courts are not to '"strain" to interpret such writings "in their mildest and most inoffensive sense to hold them nonlibelous."'" *Id.* (quoting *November v. Time Inc.*, 194 N.E.2d 126, 128 (N.Y. 1963)). "Finally, 'the words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood *by the public to which they are addressed*.'" *Id.* (quoting *November*, 194 N.E.2d at 128).

### 1.      Fact Versus Opinion

The defamatory statement at issue must express an assertion of fact rather than one of opinion. "[U]nder New York law, pure opinion . . . is not actionable because expressions of

opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016) (internal quotation marks omitted and alteration adopted) (quoting *Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014)).  "This is because a statement of opinion is not an assertion of fact that can be proven false, and '[a]n assertion that cannot be proved false cannot be held libelous.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 459 (S.D.N.Y. 2012) (alteration in original) (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977)).

"Distinguishing between fact and opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean." *Davis*, 22 N.E.3d at 1004–05 (internal quotation marks omitted).  "Thus, courts must undertake the 'often complicated task of distinguishing between potentially actionable statements of fact and nonactionable expressions of opinion.'" *Lan Sang*, 951 F. Supp. 2d at 519 (quoting *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006)); *see also Brian v. Richardson*, 660 N.E.2d 1126, 1129 (N.Y. 1995) ("Distinguishing between assertions of fact and nonactionable expressions of opinion has often proved a difficult task.").  "The factors to be considered are: '(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Brian*, 660 N.E.2d at 1129 (internal quotation marks omitted) (quoting *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1167 (N.Y. 1993)).  "When the defendant's statements, read in context, are readily understood as conjecture,

hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." *Levin*, 119 F.3d at 197 (citation omitted). "Often, statements of 'rhetorical hyperbole' or 'imaginative expression' are held not actionable, because they 'cannot reasonably be interpreted as stating actual facts' that could be proved false." *Biro*, 883 F. Supp. 2d at 460 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20, 25 (1990)).

"A statement of 'pure opinion' is one which is either 'accompanied by a recitation of the facts upon which it is based' or 'does not imply that it is based upon undisclosed facts.'" *Id.* at 461 (quoting *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986)). "However, if a statement 'implies that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader,' then it may be actionable." *Id.* (quoting *Levin*, 119 F.3d at 197). "Such statements may be actionable 'not because they convey "false opinions" but rather because a reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the communication is directed.'" *Id.* (quoting *Gross*, 623 N.E.2d at 1168). "In other words, a statement of opinion that is based on undisclosed facts is potentially actionable because it carries with it an implicit statement of those facts." *Id.* "On the other hand, 'a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.'" *Id.* (quoting *Gross*, 623 N.E.2d at 1168).

## 2. Falsity

Under New York Law, defamation requires a defamatory statement of fact that is false. *See Small Bus. Bodyguard*, 230 F. Supp. 3d at 307. Accordingly, "[i]t is fundamental that truth is an absolute, unqualified defense to a civil defamation action, and 'substantial truth' suffices to defeat a charge of libel." *Conti v. Doe*, 545 F. Supp. 3d 257, 271 (S.D.N.Y. 2021) (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986)); *Enigma Software Grp.*

*USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) ("It is axiomatic that truth is an absolute, unqualified defense to a civil defamation action . . . and that substantial truth is all that is required.").  "A statement is 'substantially true' if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Conti*, 545 F. Supp. 3d at 272 (internal quotation marks omitted) (quoting *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 366 (S.D.N.Y. 1998)).

### 3.      Defamatory Per Se

"New York recognizes certain statements as defamatory per se, meaning they are actionable without pleading and proof of special damages." *Celle*, 209 F.3d at 179 (internal quotation marks omitted).  "If a statement is defamatory per se, injury is assumed." *Id.*  "The issue of whether a statement is actionable per se is for the court." *Albert*, 239 F.3d at 271.

"One useful general rule is that 'a writing which *tends* to disparage a person in the way of his office, profession or trade' is defamatory per se and does not require proof of special damages." *Celle*, 209 F.3d at 179 (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)).  "A related rule is that '[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed.'" *Id.* at 180 (alteration in original) (quoting *Ruder & Finn Inc. v. Seaboard Surety Co.*, 244 N.E.2d 518, 522 (N.Y. 1981)); *see also Davis*, 754 F.3d at 82 ("[W]ords are libelous if they affect a person in his profession, trade, or business by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof." (quoting *Four Star Stage Lighting, Inc. v. Merrick*, 392 N.Y.S.2d 297 (1st Dep't 1977))).  Further, "[a] written statement that 'charges a person with the commission of a crime' . . . is libel *per se*."

*Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (quoting *Zeevi v. Union Bank of Switz.*, 1993 WL 148871, at *4 (S.D.N.Y. 1993)).

### 4.      Published to a Third Party

"Under New York defamation law, 'publication is a term of art . . . . A defamatory writing is not published if it is read by no one but the one defamed.  Published it is, however, as soon as read by anyone else.'"  *Albert*, 239 F.3d at 269 (quoting *Ostrowe v. Lee*, 175 N.E. 505 (1931)).

### B.      Fault

Under New York law, the level of fault required to recover on a defamation claim is either negligence or actual malice depending on the status of the libeled party.  *See Celle*, 209 F.3d at 176.  "Though a state-based cause-of-action, the elements of a libel action are heavily influenced by the minimum standards required by the First Amendment."  *Id.*  "In particular, the showing of fault necessary to recover for libel depends on a plaintiff's position in society, requiring a higher degree of fault for public officials and public figures."  *Id.*  And "[w]hether a plaintiff is a public figure is a question of law for the court."  *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 22 F. Supp. 3d 240, 249 (S.D.N.Y. 2014) (citing *Celle*, 209 F.3d at 176); *see also Coleman v. Grand*, 2021 WL 768167 (E.D.N.Y. Feb. 26, 2021) (same).

### 1.      General Public Figures, Limited Public Figures, and Private Figures

In defamation actions, "[t]here are three recognized classes of plaintiffs: (1) 'general public figures,' *i.e.*, public officials or persons whose conduct is generally a matter of interest to the public; (2) 'limited public figures,' *i.e.*, persons whose conduct is of interest to certain portions of the public as to a limited range of issues; and (3) 'private figures.'"  *Enigma Software Grp.*, 194 F. Supp. 3d at 287 (citing cases).

A general public figure is an individual "who has 'assumed [a] role[] of especial prominence in the affairs of society." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 43 (1st Dep't 2021) ("A person can only be a general-purpose public figure if he or she is a celebrity; his or her name is a household word whose ideas and actions the public in fact follows with great interest and invites attention and comment." (internal quotation marks omitted and alterations adopted)).  "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz*, 418 U.S. at 352.

By contrast, a limited public figure (also called a "limited-purpose public figure") is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *BYD Co.*, 531 F. Supp. 3d at 819 (quoting *Gertz*, 418 U.S. at 351–52).  Under the Second Circuit's test, a limited-purpose public figure is one who has: "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984).  "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Gottwald*, 148 N.Y.S.3d at 44 (quoting *Wolston v. Reader's Digest Assn. Inc.*, 443 U.S. 157, 167 (1979)).  "In order to be considered a public controversy . . . the subject matter must be more than simply newsworthy . . . it must be a

real dispute, the outcome of which affects the general public or some segment of it in an appreciable way."  *Id.* (quoting *Krauss v. Globe Intern., Inc.*, 674 N.Y.S.2d 662, 664 (1st Dep't 1998)).

"A person may generally not be made a public figure through the unilateral acts of another."  *Id.*  "[A]n individual can become a limited purpose public figure only through his own actions.  The degree of voluntary involvement in the public controversy is important."  *Id.* (internal quotation marks omitted); *see also Mitre Sports Int'l*, 22 F. Supp. 3d at 251 ("[I]n determining whether a plaintiff is a public figure, New York courts examine whether plaintiff had taken affirmative steps to attract personal attention or had strived to achieve a measure of public acclaim.  Voluntary attention-seeking, or voluntary participation in a particular controversy is a key factor in determining limited public figure status." (citations omitted)).

### 2.    Actual Malice

"Public-figure plaintiffs must plead '"actual malice"—that is, [] knowledge that [the statement at issue] was false or [] reckless disregard of whether it was false or not.'"  *Enigma Software Grp.*, 194 F. Supp. 3d at 287 (alteration in original) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).  "Although actual malice is subjective, a court typically will infer actual malice from objective facts."  *Celle*, 209 F.3d at 183 (internal quotation marks omitted).  "These facts should provide evidence of negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice."  *Id.* (internal quotation marks omitted).  The Second Circuit has stated that "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice."  *Id.* But evidence of ill will alone does not suffice to establish actual malice.  *Id.*  "[A] court ruling on a motion for summary judgment on actual malice 'must be guided by the *New York Times* "clear

and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity.'"  *Palin v. New York Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y.) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020).

### 3.    Negligence or Grossly Irresponsible Manner

"By contrast, under New York law, private-figure plaintiffs must plead only negligence or, 'where the content . . . is arguably within the sphere of legitimate public concern,' that 'the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'"  *Enigma Software Grp.*, 194 F. Supp. 3d at 287 (quoting *Ratajack*, 178 F. Supp. 3d at 160).  In other words, "the New York Court of Appeals has declined the invitation to set the bar for private plaintiffs as low as negligence 'where the content . . . is arguably within the sphere of legitimate public concern.'"  *Ratajack*, 178 F. Supp. 3d at 160.  "In determining whether content is arguably within the sphere of legitimate public concern, the New York Court of Appeals has cautioned that 'publications directed only to a limited, private audience are matters of purely private concern.'"  *Id.* (quoting *Huggins v. Moore*, 726 N.E.2d 456, 460 (N.Y. 1999)).  When content is arguably within the sphere of legitimate public concern, "the plaintiff 'must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'"  *Id.* (*Chapadeau v. Utica Observer-Dispatch, Inc.*, 341 N.E.2d 569, 571 (N.Y. 1975)).

**C.      Litigation Privilege and Section 75 of the New York Civil Rights Law**

New York law recognizes certain privileges that shield an individual from liability for defamation.  *See Stega v. New York Downtown Hosp.*, 107 N.E.3d 543, 549 (N.Y. 2018) ("Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether." (quoting *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992))).  "[F]or example, statements uttered in the course of a judicial proceeding are absolutely privileged, 'as long as such statements are material and pertinent to the questions involved' in the proceeding."  *Id.* (quoting *Wiener v. Weintraub*, 239 N.E.2d 540, 540 (N.Y. 1968)); *see also Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455–56 (E.D.N.Y. 2013) ("New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation." (quoting *D'Annuzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 216 (E.D.N.Y. 2012))).  "The common law litigant's privilege 'offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes.'"  *Aguirre*, 961 F. Supp. 2d at 456 (quoting *D'Annuzio*, 876 F. Supp. 2d at 217).  "The common law litigants' privilege does not cover out of court statements, such as those made in a press release or press conference, because they are not made during the course of judicial proceedings."  *Id.*

Out-of-court statements, on the other hand, are governed by Section 74 of the New York Civil Rights Law, which provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civ. Rights Law § 74. "The fair and true report privilege has been described as an absolute privilege that is not defeated by the presence of malice or bad faith." *Lan Sang*, 951 F. Supp. 2d at 520 (quoting *Biro*, 883 F. Supp. 2d at 477). "A statement is deemed a fair and true report if it is 'substantially accurate.'" *Id.* (quoting *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* (quoting *Karedes*, 423 F.3d at 119). "A fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979).

"A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021) (internal quotation marks omitted and alteration adopted). For the privilege to apply, the statement at issue must be connected to a judicial proceeding. *See Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 202, 311 (S.D.N.Y. 2019). This is not to say that "the court filing, the court, or the jurisdiction be specifically identified in the article," but "[t]he key question is whether the reader is able to determine that the report is *of a proceeding*." *Kinsey*, 991 F.3d at 180. "In other words, if the context in which the statement is made makes it impossible for the ordinary viewer or reader to determine whether the publication was reporting on a judicial proceeding, the absolute privilege does not apply." *Id.* at 179 (internal quotation marks omitted and alterations adopted). "Comments that essentially summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within § 74's

privilege." *Lan Sang*, 951 F. Supp. 2d at 521 (quoting *Lacher v. Engel*, 817 N.Y.S.2d 37, 43 (1st Dep't 2006)).

"The absolute privilege under Section 74 also 'extends to the release of background material with regard to the case, so long as the statement is a substantially accurate description of the allegation,' including 'where the description of the case is offered by a party's legal counsel.'" *Lan Sang*, 951 F. Supp. 2d at 521 (quoting *Fishof v. Abady*, 720 N.Y.S.2d 505, 505 (1st Dep't 2001)); *see also Aguirre*, 961 F. Supp. 2d at 457 ("The protections of section 74 extend to pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case." (quoting *Riel v. Morgan Stanley*, 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007))); *Biro*, 883 F. Supp. 2d at 478.  "New York courts have held that 'once it is established that the publication is reporting on a judicial proceeding, how a reporter gathers his information concerning a judicial proceeding is immaterial provided his [or her] story is a fair and substantially accurate portrayal of the events in question." *Biro*, 883 F. Supp. 2d at 478 (alteration in original) (quoting *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592, 596 (2d Dep't 2009)).  "The fact that a defendant 'derive[s] information about the judicial proceedings from secondary sources [does] not mean that Civil Rights Law § 74 [is] inapplicable.'" *Id.* (alterations in original) (quoting *Cholowsky*, 887 N.Y.S.2d at 596).

However, "Section 74 does not afford protection if the specific statements at issue, considered in their context, suggest more serious conduct than that actually suggested in the official proceeding." *Lan Sang*, 951 F. Supp. 2d at 521 (internal quotation marks omitted and alteration adopted); *see also Aguirre*, 961 F. Supp. 2d at 457 (same); *Biro*, 883 F. Supp. 2d at 477 (same).  Additionally, the New York Court of Appeals has concluded that "it was never the intention of the Legislature in enacting section 74 to allow any person to maliciously institute a

judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969). "However, '[t]he *Williams* exception is narrow' and cannot apply 'in the absence of any allegation that the . . . action was brought maliciously and solely for the purpose of later defaming the [complainant].'" *Wexler v. Allegion (UK) Limited*, 374 F. Supp. 3d at 312 n.8 (second alteration in original) (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009)).

## II.     Application

### A.     Plaintiff as a Private Figure

The Court first addresses the threshold question of Plaintiff's status as a public or private figure with respect to this defamation action.  The undisputed evidence in the record supports finding that Plaintiff is a private figure.  There is no evidence that would support the conclusion that he is either a general public figure or a limited-purpose public figure.

First, there are no facts establishing that Plaintiff himself is a celebrity or household name such that he should be considered a general public figure.  Though Defendant identifies Plaintiff as the son of "Judge Judy"—a television personality who might arguably be considered a general public figure—there is no evidence that Plaintiff himself should be considered a general public figure simply because of this familial relationship.  It would be rare for an individual to become a public figure by an accident of genealogy alone.  Indeed, Defendant frequently identifies Plaintiff as Judge Judy's son, suggesting that Plaintiff's name alone would not be recognizable to the general public.  *Cf. Krauss*, 674 N.Y.S.2d at 664 ("Plaintiff was not famous in his own right, and his marriage to Ms. Lunden certainly did not bestow upon him the sort of fame that is necessary to be considered a general public figure.  Indeed, the very article at issue did not call plaintiff by name in the headline or anywhere on the front page, identifying him only as Ms.

Lunden's husband."); *James v. Gannett Co.*, 353 N.E.2d 834, 839 (N.Y. 1976) (describing precedent holding that "the wife of a member of a prominent society family was not a public figure" where "she had not assumed a role of especial prominence in society at large, had not thrust herself into the forefront of a particular controversy in order to influence its resolution" even where she had held "a few press conferences" (citing *Time, Inc. v. Firestone*, 424 U.S. 448, 454–55 (1976))).

Second, there is no evidence in the record that would support finding that Plaintiff is a limited-purpose public figure under the Second Circuit's four-part test in *Lerman*. The first three parts of the test ask whether Plaintiff: "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; [and] (3) assumed a position of prominence in the public controversy." *Lerman*, 745 F.2d at 136. There is no indication from the record that Plaintiff voluntarily took actions to affirmatively wade into a public controversy. Rather, the record shows that Plaintiff agreed to act as counsel in a private legal matter of no particular public importance whatsoever affecting specific individuals, including IGS Realty and Defendant. There has been no showing on this record that the IGS Realty matter involving Defendant was "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Gottwald*, 148 N.Y.S.3d at 44. There is no evidence that would support that the IGS Realty matter or any of the relevant, subsequent litigation had broader implications constituting a public controversy. In addition, there is no evidence that Plaintiff engaged in "[v]oluntary attention-seeking" with respect to these matters. *Mitre Sports Int'l*, 22 F. Supp. 3d at 251. Though Defendant—as opposed to Plaintiff—has engaged in efforts to attract attention to the IGS Realty matter, publicize Plaintiff's involvement,

and influence the public, Plaintiff did not join in those efforts; Defendant cannot transform Plaintiff into a public figure through these "unilateral acts." *Gottwald*, 148 N.Y.S.3d at 44.  The fourth part of the *Lerman* test asks whether Plaintiff "maintained regular and continuing access to the media." 745 F.2d at 137.  There is no evidence that such was the case with Plaintiff here. Though there is evidence in the record that some members of the media covered the filing of the instant suit by Plaintiff, it cannot be said that Plaintiff himself played a role in that coverage. And even assuming Plaintiff did, a single instance of media coverage cannot sustain a finding that Plaintiff maintained "regular" and "continuing" access to the media.  On this record, no jury could reasonably find that Plaintiff voluntarily engaged in conduct that would make him a limited-purpose public figure under *Lerman*.

Defendant offers no argument regarding Plaintiff's status as either a public figure or a private figure in his summary judgment papers.  And "the public-figure determination should properly be made by the court, placing the burden of proof on the *defendant*." *Krauss v. Globe Int'l, Inc.*, 674 N.Y.S.2d 662, 663–64 (1st Dep't 1998) (emphasis added) (citations omitted); *see also Fairley v. Peekskill Star Corp.*, 445 N.Y.S.2d 156, 159 (2d Dep't 1981) ("The burden of proof with respect to the status of the plaintiff is on the media defendant.").  Since Defendant has not established that Plaintiff should be considered a public figure and since the record on summary judgment does not support such a finding, Plaintiff is considered a private figure for purposes of this defamation action.

As a result, for each of Plaintiff's defamation claims, Plaintiff need only establish, at most, that Defendant "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties"—assuming that the content at issue is found to be "arguably within the sphere of

legitimate public concern." *Enigma Software Grp.*, 194 F. Supp. 3d at 287.  If not, Plaintiff need

only show negligence in order to succeed on his defamation claims.  *Id.*

B.     **Plaintiff's Defamation Claims**

The Court addresses Plaintiff's defamation claims out of order.  The Court first addresses

Plaintiff's defamation claim regarding Brady's email to forty-four members of the news media

before turning to the claim regarding Brady's advertisement on Craigslist.  The Court last

addresses the claim based on Brady's statements on YouTube.

1.     **Brady's Email to Forty-Four Members of the News Media**

Defendant is granted summary judgment on Plaintiff's defamation claim concerning

Defendant's email to forty-four members of the news media.  The statements at issue in the

email are absolutely privileged as a fair and true report of a judicial proceeding under Section 74

of the New York Civil Rights Law.

Plaintiff's defamation claim concerns Defendant's email to forty-four members of the

news media with the subject line "VERY SAD – Third time will be the charm against Judge

Judy's lowlife son Gregory :(" and with the body of the email stating "LOCK HIM UP !!!  The

third time will be the charm."  Sheindlin Decl., Ex. 8.  The email attached a two-page letter that

was authored by Brady and was filed with this Court in *Brady v. Sheindlin*, 20-cv-7047

(S.D.N.Y.), ECF No. 22.  Plaintiff argues that the attached letter contained defamatory

statements falsely accusing Plaintiff of criminal activity, among other things.  Dkt. No. 129 at 7.

Even assuming Plaintiff's contentions are correct, however, the statements in Defendant's

letter, which was a court filing attached to the email in question, are absolutely privileged.

Section 74 of the New York Civil Rights Law provides an absolute privilege for "the publication

of a fair and true report of any judicial proceeding."  N.Y. Civ. Rights Law § 74.  And statements

that are part of a written communication made in the course of a judicial proceeding fall within

the litigation privilege under New York common law.  *See Stega*, 107 N.E.3d at 549.  Here, the

defamatory statements of which Plaintiff complains are within the copy of the court filing

attached to the email.  These statements are protected by the litigation privilege, and there can be

no question that Defendant's direct reproduction of that court filing is a fair and true report—or a

"substantially accurate" description—of a judicial proceeding.  *Lan Sang*, 951 F. Supp. 2d at

520.  Accordingly, those statements are not actionable.[6]

Though Plaintiff cannot bring a defamation action over the statements in this email,

Plaintiff is not without any remedy.  Plaintiff could have sought relief from the court where this

document was filed, including under Federal Rule of Civil Procedure 11 and could have argued

that it was being presented for an "improper purpose, such as to harass."  Fed. R. Civ. P.

11(b)(1); *see also Wexler*, 374 F. Supp. 3d at 312 n.8 (discussing alternative remedies such as

"mov[ing] to strike from those pleadings any 'scandalous matter,' Fed. R. Civ. P. 12(f), or for

sanctions for presenting those pleadings for 'any improper purpose, such as to harass,' Fed. R.

Civ. P. 11(b)(1)").

For these reasons, Plaintiff's is denied summary judgment on his defamation claim as to

Brady's email, and Defendant is granted summary judgment on this claim.

---

[6] Plaintiff does not argue that the subject line and body of the email—independent of or in
relation to the email attachment—contain defamatory statements.  The Court therefore need not
decide this question.  However, the Court notes that, to be actionable, a defamatory statement
must express an assertion of fact rather than one of opinion and that expressions of opinion, "no
matter how offensive, cannot be the subject of an action for defamation."  *Ratajack*, 178 F. Supp.
3d at 158; *see also Biro*, 883 F. Supp. 2d at 460 ("Often, statements of rhetorical hyperbole or
imaginative expression are held not actionable, because they cannot reasonably be interpreted as
stating actual facts that could be proved false." (internal quotation marks omitted)).  Plaintiff has
not explained how the statements "VERY SAD – Third time will be the charm against Judge
Judy's lowlife son Gregory" and "LOCK HIM UP !!! The third time will be the charm" either
independently or in relation to the attachment can be considered assertions of fact or statements
of opinion based on undisclosed facts or are otherwise actionable.

> ### 2.     Brady's Advertisement on Craigslist

The Court next addresses Plaintiff's defamation claim premised on Defendant's Craigslist advertisement.  Plaintiff argues that the following statements in the advertisement constitute defamation per se:

> The case proves that Sheindlin used false instruments in a fraud scheme to collect over 1.7 million dollars on a personal guaranty for his client on September 5, 2018. The case has not broken in the news yet since it is being suppressed for this politically connected man but it will break very soon because the case is too scandalous to be ignored and over 7000 people have already learned about the case on youtube . . .
>
> Also there are three under cover videos of Sheindlin from September 5, 2018 as he was stealing the money that can be seen on YouTube if you type in the name Gregory Sheindlin.

Dkt. No. 129 at 8 (quoting Sheindlin Decl., Ex. 4).

The first sentence at issue—"The case proves that Sheindlin used false instruments in a fraud scheme to collect over 1.7 million dollars on a personal guaranty for his client on September 5, 2018."—is protected by the fair and true report privilege under Section 74 of the New York Civil Rights Law unless an exception applies.  In determining whether a statement is defamatory, the New York Court of Appeals "has repeatedly instructed that courts must give the disputed language a fair reading in the context of the *publication as a whole*."  *Celle*, 209 F.3d at 177 (internal quotation marks omitted).  Here, the context surrounding this sentence makes clear that Defendant was reporting on a judicial proceeding.  The sentences immediately preceding the sentence in question explicitly point out that Defendant is discussing a court case:  "I am looking for a litigator to take over the case of James H Brady v Gregory Sheindlin 20-cv-07047 that is currently in the District Court in the Southern District of New York.  Sheindlin is the son of Judge Judy Sheindlin."  Sheindlin Decl., Ex. 4.  Courts have noted that, for the fair report privilege to apply, "the court filing, the court, or the jurisdiction" need not "be specifically

identified in the article," and rather "[t]he key question is whether the reader is able to determine

that the report is *of a proceeding*." *Kinsey*, 991 F.3d at 180.  Though Defendant's advertisement

did not need to do so to fall within the privilege, the advertisement explicitly mentioned the

name of the court case, the jurisdiction in which it was filed, and even the docket number; with

this context, a reader of this advertisement would immediately understand the connection

between the case and the statement in question.  Further, in the paragraph following this

sentence, the advertisement states:  "There is currently a motion to dismiss that is expected to be

denied.  There is also currently a request to the Court that it Order that I can file a criminal

complaint against the politically connected son of Judge Judy Sheindlin since it was already

proven that he committed a criminal act to steal the 1.7 million dollars."  Sheindlin Decl., Ex. 4.

Defendant's discussion of the procedural posture and a pending motion in the case further

reinforces that a reader would understanding the sentence at issue to be a report on a judicial

proceeding.

In addition, the statement in question is a "substantially accurate" recounting of

Defendant's pleadings in *Brady v. Sheindlin*.  "Comments that essentially summarize or restate

the allegations of a pleading filed in an action are the type of statement that fall within § 74's

privilege." *Lan Sang*, 951 F. Supp. 2d at 521.  The sentence in question closely mirrors the

allegations of Defendant's complaint in *Brady v. Sheindlin*.  *See, e.g.*, 20-cv-7047 (S.D.N.Y),

ECF No. 1 ¶ 2 ("As part of a common law fraud scheme, Gregory Sheindlin . . . used false

instruments . . . that had absolutely nothing to do with the enforceability of the Personal

Guarantees to fraudulently contain a judgment that, according to Mr. Sheindlin's fraudulent

calculations grew to $1,705,535.71 by September 5, 2018."); *id.* ¶ 23 ("The evidence . . . proves

conclusively that The Sheindlin Defendants committed a felony by using totally false

instruments that had absolutely nothing to do with the Personal Guarantees to force the sale of the Brady's commercial apartment to pay IGS Realty and its principal Philippe Ifrah what grew to be $1,705,535.71 by their calculations September 5, 2018."); *id.* ¶ 42 ("A review of the documents filed in the Article 52 *Petition* and *Motion for Money Judgment* proves again that the Sheindlin Defendants used three different false instruments to steal over $1.7 million dollars [sic] from James and Jane Brady on September 5, 2018."); *id.* ¶ 57 ("Plaintiff now brings this lawsuit to recover damages from the Sheindlin Defendants who committed a felony by using false instruments that forced the sale of his commercial co-op apartment, destroying his life's business and his livelihood, and stole $1,705,535.71.").  Importantly, a person need not report both sides of a disputed litigation to be entitled to the fair report privilege.  Thus, there was no obligation on Defendant to report Plaintiff's vehement and forceful response to Plaintiff's allegations.  And though the allegations in the pro se pleadings are phrased as having been already proven, if Plaintiff took issue with the content of these pleadings, Plaintiff could have sought relief from the court where the pleadings were filed including by "mov[ing] to strike from those pleadings any 'scandalous matter,' Fed. R. Civ. P. 12(f), or for sanctions for presenting those pleadings for 'any improper purpose, such as to harass,' Fed. R. Civ. P. 11(b)(1)."  *Wexler*, 374 F. Supp. 3d at 312 n.8.

Similarly, the statement that "there are three under cover videos of Sheindlin from September 5, 2018 as he was stealing the money that can be seen on YouTube if you type in the name Gregory Sheindlin" is protected by Section 74 of the New York Civil Rights Law unless an exception applies.  "The absolute privilege under Section 74 also 'extends to the release of background material with regard to the case, so long as the statement is a substantially accurate description of the allegation,' including 'where the description of the case is offered by a party's

legal counsel.'" *Lan Sang*, 951 F. Supp. 2d at 521 (quoting *Fishof*, 720 N.Y.S.2d at 505).

Defendant here references background material related to his case, and the statement in question

essentially parrots the same allegations from his pleadings.  While the reference to the videos

does not appear in Defendant's complaint in *Brady v. Sheindlin*, "[a] fair and true report admits

of some liberality."  *Holy Spirit Ass'n for Unification of World Christianity*, 399 N.E.2d at 1187;

*see also Wexler*, 374 F. Supp. 3d at 311 ("The challenged language . . . 'should not be dissected

and analyzed with a lexicographer's precision.'" (quoting *Becher v. Troy Publi'g Co., Inc.*, 589

N.Y.S.2d 644, 646 (3d Dep't 1992))).  And this statement does not "suggest more serious

conduct than that actually suggested in the official proceeding."  *Lan Sang*, 951 F. Supp. 2d at

521.  It instead reiterates the same allegation about Plaintiff and adds only that related videos can

be found on YouTube.  The postings on YouTube themselves may be independently actionable

for defamation, *see infra* Section II.B.3, and Defendant's attempt to bring more attention to them

here may speak to damages if a defamation claim for the YouTube postings is proven, *see Ferri

v. Berkowitz*, 561 F. App'x 64, 65 (2d Cir. 2014) (summary order) ("Under New York law, fact

finders are free to consider the 'plaintiff's standing in the community, the nature of defendant's

statement made about the plaintiff, *the extent to which the statement was circulated*, the tendency

of the statement to injure a person such as the plaintiff, and all of the other facts and

circumstances in the case' in order to determine '[f]air compensation" . . . ." (emphasis added)

(quoting N.Y. Pattern Jury Instr.-Civil 3:29)).  But, barring any other exception, the Section 74

privilege extends to the statement referencing the YouTube videos in Defendant's Craigslist

advertisement.[7]

---

[7] Plaintiff does not explain how the second sentence—"The case has not broken in the news yet
since it is being suppressed for this politically connected man but it will break very soon because
the case is too scandalous to be ignored and over 7000 people have already learned about the

A question for the jury, however, remains regarding whether Defendant maliciously instituted the proceedings in *Brady v. Sheindlin* to publicize the allegations contained therein. The New York Court of Appeals has set forth a narrow exception that prevents Section 74's privilege from allowing "any person to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute." *Williams*, 246 N.E.2d at 337.  Here, the question for the jury is whether Defendant brought the *Brady v. Sheindlin* action "solely for the purpose of later defaming" Plaintiff.  *Wexler*, 374 F. Supp. 3d at 312 n.8.  Plaintiff describes how Defendant "commenced a litany of legal actions in which he impugned the motivations and integrity of anyone involved with the adverse state-court decision."  Dkt. No. 131-14 ¶ 29; *see also id.* ¶ 58 ("[I]t has become your habit to unjustifiably impugn the motivations and integrity others with who you disagree.").  Plaintiff discusses *Brady v. Sheindlin* among this "litany" of actions initiated by Defendant.  Defendant, however, casts the *Brady v. Sheindlin* action as an attempt to redress what he viewed as the damages he suffered from the IGS Realty judgment. The question of whether Defendant brought that action solely to later defame Plaintiff is one for the jury to resolve and implicates whether the *Williams* exception and the protection of Section 74 applies.

Accordingly, because factual questions for the jury remain on this claim, both parties are denied summary judgment as to this claim.

---

case on youtube."—is defamatory as to Plaintiff.  At most, it describes Plaintiff as a "politically connected man," but Plaintiff puts forth no argument for why this statement is a defamatory statement of fact.

### 3.      Brady's Statements on YouTube

Plaintiff argues that the statements published by Defendant on YouTube constitute defamation per se and falsely claim that Plaintiff stole $1.7 million from Defendant.  Dkt. No. 129 at 3–4.  Defendant responds that the statements are true and that therefore there is no defamation claim.  Dkt. No. 123 at 1–4.

The statements published by Defendant on YouTube can be reasonably construed as having more than one meaning—one of which carries a defamatory connotation and one of which is not actionable under defamation—and, thus, the question is one for the jury to resolve. *See Lan Sang*, 951 F. Supp. 2d at 518 ("Where an allegedly defamatory statement can be reasonably construed as having more than one meaning, only some of which carry a defamatory connotation, whether the statement is defamatory is a question of fact for the jury.").

The undisputed record on summary judgment establishes that the content posted to YouTube by Defendant of and about Plaintiff could be construed as being defamatory per se. These statements are defamatory per se because they charge Plaintiff with the commission of a crime and impute fraud and dishonesty to Plaintiff.[8]  *See Celle*, 209 F.3d at 180; *Meloff*, 240 F.3d at 145.  And "[a]n accusation of theft constitutes an allegation of a 'serious crime'" so as to be defamatory per se.  *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013).  For

---

[8] Defendant also posted on YouTube a number of comments that constitute expressions of opinion rather than assertions of fact.  *See, e.g.*, Sheindlin Decl., Ex. 1 ("Shady Sheindlin needs some time out time in a 6x8 cell."); *id.* ("I certainly wont stop til Judge Judy's lowlife son Gregory is in prison."); *id.* ("It's sickening that Gregory Sheindlin is such a psychopath that thought he could get away with this cruel scheme.  10 years minimum in prison is the medicine he needs."); *id.* ("What Gregory Sheindlin did was horrible, deranged and criminal."); *id.*, Ex. 2 ("Shady Sheindlin is the lowest of the low.").  But such "rhetorical hyperbole," "imaginative expression," or other expressions of opinion cannot be reasonably interpreted to state facts that can be proved false, *Biro*, 883 F. Supp. 2d at 460, and therefore, such statements of opinion, "no matter how offensive, cannot be the subject of an action for defamation," *Ratajack*, 178 F. Supp. 3d at 158.

example, the title of the three YouTube videos uploaded by Defendant states, "Judge Judy's son Gregory Sheindlin stealing over $1.7 million dollars on September 5, 2018."  Sheindlin Decl., Exs. 1–3.  The description field under each of the videos includes a sentence stating that Sheindlin and another man "criminally used false statements to steal over $1.7 million dollars from the Brady's."  Sheindlin Decl., Exs. 1–3.  After individuals posted comments under the three videos, Defendant replied to a number of these comments.  Sheindlin Decl., Ex. 1–3.  Among other replies, Defendant posted comments reiterating that Sheindlin stole $1.7 million from him.  *See, e.g.*, Sheindlin Decl., Ex. 1 ("This politically connected man with the billionaire mom thinks that he is untouchable and thinks that he will get away with his proven criminal conduct that destroyed my livelihood in addition to stealing my life savings of over 1.7 million dollars."); *id.* ("It is undisputed and indisputable that this man stole over 1.7 million dollars thou [sic] a fraud scheme he masterminded."); *id.* ("Shady Sheindlin stole over 1.7 million dollars from me and my wife on September 5, 2018 . . . ."); *id.* ("There are currently three videos online and all of three [sic] show Judge Judy's son Gregory Sheindlin stealing over 1.7 million dollars from me and my wife through a fraud scheme."); *id.* ("Its [sic] undisputed by Gregory Sheindlin I was victimized When that [he] stole over 1.7 million dollars from me and my wife through a fraud scheme he masterminded."); *id.* (stating that Sheindlin "stole over 1.7 million dollars from [Brady] through a fraud scheme"); *id.* ("Sheindlin stole the money."); *id.*, Ex. 3 ("[T]he back story is that Judge Judy's son Gregory Sheindlin stole my life savings of over 1.7 million dollars and forced the sale of my family business through his implementation of a criminal fraud scheme.").  Such statements accusing Plaintiff of stealing are defamatory per se.

A subset of Defendant's postings on YouTube about the Plaintiff, however, could also be construed in such a way as to fall within the fair and true report privilege governed by Section 74

of the New York Civil Rights Law.  When considering whether particular statements are defamatory, courts must give the disputed language a fair reading in context, must not to strain to interpret such writings in their mildest or most inoffensive sense, and must construe the language as it would be read and understood by the public to which they are addressed.  *See Celle*, 209 F.3d at 177.  "A key test courts have adopted to resolve whether a report qualifies for the fair report privilege is whether the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding."  *Kinsey*, 991 F.3d at 178–79; *see also Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022) (summary order) ("A report qualifies for the privilege if the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding" (internal quotation marks omitted)).

Defendant originally posted the videos on YouTube on August 13, 2020, and, later that month, on August 30, 2020, Defendant filed the complaint in *Brady v. Sheindlin*.  Considered in context, the posts made after the *Brady v. Sheindlin* case was filed could be construed as a "substantially accurate" report of judicial proceedings and thus privileged under Section 74.[9] Alongside Defendant's statements about Plaintiff on YouTube, Defendant often directs individuals to a lawsuit he filed against Plaintiff.  *See, e.g.*, Sheindlin Decl., Ex. 1 ("Please follow the case James H Brady v. Gregory Sheindlin on Google to keep up with the case."); *id.* ("I am pressing to hold him accountable in Federal Court in the case of James H Brady v Gregory Sheindlin."); *id.* ("Google James H Brady v Gregory Sheindlin and you will see I am pressing that the Judge Order that the criminal case against Gregory Sheindlin go before a

---

[9] The privilege is inapplicable to posts on YouTube before the *Brady v. Sheindlin* action was filed because such posts cannot be considered a report of a judicial proceeding since the judicial proceeding did not exist yet.

Federal Grand Jury."); *id.*, Ex. 2 ("Every media company I could possibly think of knows about these undercover tapes, the case of James H Brady v Gregory Sheindlin and the case of Gregory Sheindlin v James H. Brady."); *id.* ("If you google James H Brady v Gregory Sheindlin you will see the case pop up."); *id.* ("Follow James H Brady v Gregory Sheindlin that is being fought in New York District Court.").  And, as discussed *supra* Section II.B.2, the statements in question about Plaintiff essentially summarize or restate the allegations of the pleadings filed in *Brady v. Sheindlin*.  On this record, the Court cannot say as a matter of law that the privilege does not apply because it is for the jury to decide "if the context in which the statement[s] [are] made makes it impossible for the ordinary viewer or reader to determine whether the publication was reporting on a judicial proceeding." *Kinsey*, 991 F.3d at 179.  Additionally, as discussed *supra* Section II.B.2, even if the posts were understood to be a reporting on a judicial proceeding, a factual dispute exists over whether the *Williams* exception applies.

Defendant argues that the statements posted to YouTube are true and therefore cannot support a defamation claim.  Dkt. No. 123 at 1–4.  Defendant contends that "[t]he three YouTube [v]ideos truthfully charge Sheindlin with fraudulently misrepresenting the outcome of a June 26, 2015 Jury trial" and that "[t]he three YouTube video[s] truthfully make clear Sheindlin stole the 1.7 million dollars from Brady and destroyed his life by criminally misrepresenting the June 26, 2015 Jury Interrogatory Sheet findings to unlawfully obtain a financial judgment on May 31, 2017 by fraudulently 'implying' that the jury had found the personal guarantees enforceable." *Id.* at 2.  Defendant asserts that Plaintiff and Plaintiff's counsel admitted that the issue of personal guarantees was not part of the June 26, 2015 jury interrogatory sheet.  *Id.* at 3. Defendant quotes a portion of deposition testimony wherein Plaintiff's counsel appears to state that the jury interrogatory sheet "says nothing about a personal guarantee."  *Id.*  Defendant

construes this response to be dispositive and interprets it to show that "the jury never ruled in IGS Realty's favor on the personal guarantee contract," meaning that the resulting judgment was fraudulent. *Id.*

Defendant is incorrect. While falsity is a required element in a claim for defamation and "truth is an absolute, unqualified defense," *Conti*, 545 F. Supp. 3d at 271, Defendant's evidence does not establish that the statements at issue are true. In fact, Defendant raised the same argument before the Second Circuit in *Brady v. Sheindlin*. *See* 2021 WL 5312995, *2 (2d Cir. Nov. 16, 2021) ("Brady claims that because the interrogatories the state court gave the jury did not specifically mention his personal guarantees or his affirmative defenses, the state court therefore never determined the enforceability of those guarantees or ruled on those affirmative defenses, and that [Sheindlin and the Sheindlin Law Firm] thus 'falsified' the jury verdict. Repeatedly, Brady's briefs advert to a May 4, 2021 deposition of Sheindlin in [a] separate case, in which Sheindlin stipulates to the text of the state court jury interrogatories."). The Second Circuit determined that the "stipulation does *not* establish (as Brady claims) that Brady's personal guarantees were unenforceable or that the state court failed to consider Brady's affirmative defenses." *Id.* The Second Circuit continued, "[t]o the contrary, the state court properly and explicitly instructed the jury on both Brady's affirmative defenses and the personal guarantees," and concluded that "Brady's central argument is thus entirely without merit." *Id.* The Court follows the Second Circuit's analysis of this identical issue. Defendant's argument based solely on the stipulation that the jury interrogatories did not mention the personal guarantees in no way shows that Plaintiff stole $1.7 million from Defendant. And aside from this argument, there is no evidence in the record to contradict Plaintiff's evidence that these

statements accusing Plaintiff of stealing are false.  Plaintiff's argument purportedly based on truth, therefore, fails.

In summary, because factual questions for the jury remain on whether the fair report privilege applies, neither party is entitled to summary judgment on this defamation claim.

\* \* \*

It may seem perverse that a party who has been sanctioned in various courts, subject to two filing injunctions in this District, and found to have filed "a long line of vexatious, harassing, and duplicative lawsuits," *Brady v. IGS Realty Co. L.P.*, 2020 WL 6049649, at \*4, could nonetheless fall within the protection of the related privileges covering statements made in litigation and fair reports of those proceedings.  But the purpose of the litigation privilege is "predicated upon the public interest in the freedom of participants in litigation to 'speak with that free and open mind which the administration of justice demands,'" *D'Annunzio*, 876 F. Supp. 2d at 217 (quoting *Youmans v. Smith*, 47 N.E. 265, 268 (N.Y. 1897)), and the purpose of the fair report privilege is "to encourage the dissemination of information concerning the judicial branch of government and thereby serve the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice," *id.* (internal quotation marks omitted) (quoting *Gurda v. Orange Cnty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 439 N.Y.S.2d 417, 423–24 (2d Dep't 1981) (Mollen, J., dissenting), *rev'd for reasons stated in this dissent*, 436 N.E.2d 1326 (1982)).  Together, these privileges help channel disputes between parties into the courts so that the courts may determine who prevails and who does not and ultimately facilitate the administration of justice.

## CONCLUSION

Brady's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Sheindlin's motion for summary judgment is DENIED.  As stated in the Court's previous order,

a telephonic case management conference is scheduled for April 29, 2022 at 3:00 p.m.  Parties

are directed to dial into the Court's teleconference line at 888-251-2909 and use access code

2123101.


      SO ORDERED.

Dated: April 7, 2022
      New York, New York

                                    LEWIS J. LIMAN
                            United States District Judge